The STATE of Ohio, Appellee,

v.

BOLAND, Appellant.

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 00–CA–126.

Decided March 12, 2002.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Lester M. Szabados, Assistant Prosecuting Attorney, for appellee.

J. Gerald Ingram, for appellant.

WAITE, Judge.

{¶ 1} This is a timely appeal from a judgment of the court of common pleas imposing upon Jayne Ann Boland ("appellant") five consecutive prison terms of one year each after she entered guilty pleas to four counts of forgery and one count of theft by deception, all of which are fifth degree felonies. Appellant herein challenges both the length of her individual prison terms and the fact that the trial court ordered that they run consecutively. In light of the discussion that follows, this court concludes that the trial court's decision to impose the maximum term in this case was proper but finds that the record and trial court's findings do not adequately support the imposition of five consecutive sentences. Therefore, this court vacates appellant's sentences and remands this matter to the trial court for further proceedings.

{¶ 2} On February 4, 1999, a grand jury issued an eight-count indictment charging appellant with six counts of forgery in violation of R.C. 2913.31(A)(3)(c) and two counts of theft by deception as prohibited by R.C. 2913.02(A)(3)(b). Over a six-month period beginning in February 1998, appellant embezzled approxi-

mately $50,000 from her employer by forging his name to checks drawn on his account and cashing them at National City Bank. The victim, attorney John Ausnehmer, a longtime friend of appellant's family, had hired appellant to work as his secretary. Appellant subsequently pleaded guilty to four of six forgery counts and one count of theft by deception. All were felonies of the fifth degree. Pursuant to a plea agreement under Crim.R. 11(F), the state agreed to dismiss the remaining counts.

{¶ 3} The matter proceeded to sentencing on May 23, 2000. In accordance with the plea agreement, the state took no position with respect to sentencing, but the victim submitted a victim impact statement. The victim asked the trial court to impose the maximum sentence, noting only that he would "never know how much restitution has to be made."

{¶ 4} Having no previous criminal background, appellant asked the trial court to impose a community control sanction. The presentence investigation report ("PSI") had recommended such a sanction after concluding that she was not likely to repeat her crimes. The PSI also reflected that before police began investigating the victim's loss, appellant had written to the victim confessing her crimes and apologizing for her actions. By the time of sentencing, appellant's father had paid approximately $50,000.00 in restitution to the victim. Addressing the victim's concerns about additional financial losses, however, appellant offered to leave the issue of further restitution open, in case the victim determined that the amount of his loss exceeded that already paid.

{¶ 5} In a judgment entered on May 30, 2000, the trial court imposed the maximum prison term of one year on each count "because the offense related to a position of trust, and after weighing the seriousness and recidivism factors, prison is consistent with the purpose and principals [sic] of the felony sentencing guidelines." In addition to imposing the maximum prison term available for each count, the trial court ordered that appellant serve each term consecutively to the other. The trial court issued no additional findings to explain or justify its decision to impose consecutive sentences.

{¶ 6} The trial court stayed appellant's sentence pending the outcome of this appeal. Appellant filed her notice of appeal on June 29, 2000, and challenges the sentence she received on two grounds. In her first assignment of error appellant alleges:

{¶ 7} "The trial court erred when it sentenced appellant to the maximum allowable prison term under the sentencing guidelines because such a sentence was not supported by the record and because the court failed to make the requisite findings required by Ohio Rev. Code Ann. § 2929.14(C)."

{¶ 8} Appellant maintains that the maximum sentences she received were excessive, that they were imposed in violation of applicable sentencing law, and that they should be reversed.

{¶ 9} R.C. 2953.08(G) provides that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law. Therefore, this court must examine appellant's sentence to determine whether the record supports the sentence or whether the sentence is otherwise contrary to law. *State v. Roth* (1999), 133 Ohio App.3d 578, 729 N.E.2d 422; R.C. 2953.08(G)(1)(a) and (d).

{¶ 10} When imposing a felony sentence, the court must consider the over-riding purposes of felony sentencing: to protect the public from future crime and to punish the offender. R.C. 2929.11(A). To achieve those ends, the sentencing court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A).

{¶ 11} The sentencing court is further guided by the following principles requiring the sentence to be (1) reasonably calculated to reflect the overriding purposes of felony sentencing, (2) commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, (3) consistent with the sentences for similar crimes committed by similar offenders, and (4) not based on race, ethnicity, gender or religion of the offender. R.C. 2929.11(A) through (C).

{¶ 12} Under Ohio's felony sentencing law there are two primary categories of factors the court must consider in making the sentencing determination: seriousness factors and recidivism factors. Additionally, the court may consider any other relevant factors relating to seriousness and recidivism to the extent that they are helpful in achieving the overriding purposes and principles of felony sentencing. R.C. 2929.12(A); *State v. Roth,* supra.

{¶ 13} The seriousness factors enumerated in R.C. 2929.12 take one of two forms: factors that make an offense more serious than conduct normally consti-tuting the offense and factors that make an offense less serious than conduct normally constituting the offense. The factors that make an offense more serious are enumerated under R.C. 2929.12(B). They are:

{¶ 14} "(1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.

{¶ 15} "(2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.

{¶ 16} "(3) The offender held a public office or position of trust in the community, and the offense related to that office or position.

{¶ 17} "(4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice.

{¶ 18} "(5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others.

{¶ 19} "(6) The offender's relationship with the victim facilitated the offense.

{¶ 20} "(7) The offender committed the offense for hire or as a part of an organized criminal activity.

{¶ 21} "(8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion."

{¶ 22} The factors that make an offense less serious than conduct normally constituting the offense are enumerated under R.C. 2929.12(C). They are:

{¶ 23} "(1) The victim induced or facilitated the offense.

{¶ 24} "(2) In committing the offense, the offender acted under strong provocation.

{¶ 25} "(3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.

{¶ 26} "(4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense."

{¶ 27} The factors relating to the likelihood of recidivism are enumerated under R.C. 2929.12(D) as follows:

{¶ 28} "(1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, * * * or under post-release control * * * for an earlier offense.

{¶ 29} "(2) The offender previously was adjudicated a delinquent child * * * or the offender has a history of criminal convictions.

{¶ 30} "(3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child * * * or the offender has not responded favorably to sanctions previously imposed for criminal convictions.

{¶ 31} "(4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the

offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.

{¶ 32} "(5) The offender shows no genuine remorse for the offense."

{¶ 33} Factors indicating that recidivism is not likely are enumerated under R.C. § 2929.12(E). They are:

{¶ 34} "(1) Prior to committing the offense, the offender had not been adjudicated a delinquent child.

{¶ 35} "(2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.

{¶ 36} "(3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.

{¶ 37} "(4) The offense was committed under circumstances not likely to recur.

{¶ 38} "(5) The offender shows genuine remorse for the offense."

{¶ 39} In determining whether a maximum term is warranted, R.C. 2929.14(C) essentially allows the court to impose the longest prison term authorized for the offense upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders, and upon certain repeat violent offenders. Where a court finds any one of these factors to apply, it may impose a maximum sentence. R.C. 2929.14(C) and 2929.19(B)(2)(e).

{¶ 40} The record in the instant case, including the detailed findings of the trial court, supports the decision to impose maximum sentences. The trial court's sentencing order reflects that before imposing sentence, it balanced the requisite seriousness and recidivism factors before making the following findings:

{¶ 41} "The victim suffered serious economic harm;

{¶ 42} "The Defendant held a position of trust and the offenses are related to this position; and

{¶ 43} "The relationship with the victim facilitated this offense (the victim hired the Defendant because they were family friends)."

{¶ 44} The court then found that appellant was likely to repeat her crimes as provided under R.C. 2929.12(D) because (1) appellant failed to demonstrate genuine remorse for her crimes; and (2) while her sentencing was pending, the defendant opened a bank account using checks she knew had been drawn on a closed account.

{¶ 45} These findings are supplemented by others made during the sentencing:

{¶ 46} "Your attorney makes the argument that recidivism is not likely, but as I read your PSI, this is not the first time that this happened. You were caught one other time in that office. And because Mr. Ausnehmer has a big heart, he gave you another chance because of the family ties. You should have gone to jail then. So you took advantage of that generosity, and you got bigger and better and more bold."

{¶ 47} The trial court was further troubled by other aspects of appellant's behavior as indicated by the following remarks:

{¶ 48} "* * * I feel sorry for your father who's here in court today that has to hear this. When the bank determined that you opened an account with them using checks drawn on closed accounts and demanded that you appear with the money, you stated that your father had died and you could not make it on that date. Now who's lying, Don Burns from the bank or you?"

{¶ 49} The trial court continued in this vein, noting:

{¶ 50} "* * *[W]hile you are looking at going to the penitentiary, you go and you pull another scam. So while you're pulling that scam, knowing that your father is bailing you out, that you're not even using a dime of your own money to pay this back, you use—I don't care if it was your father or anybody else in your family, you use their death as an excuse and they weren't even dead. You learned nothing, nothing from this."

{¶ 51} Ultimately, the trial court concluded that this was the worst type of offense because the position of trust that appellant occupied with respect to the victim facilitated her ability to embezzle from him.

{¶ 52} Appellant contends that the trial court erred when it based appellant's maximum prison sentence on a finding that she abused a position of trust. Specifically, appellant maintains that, "[f]orgeries and theft offenses frequently arise in an employment setting. This case is simply no different from any other embezzlement case prosecuted in the State of Ohio." Consequently, appellant argues, whether the defendant abused a position of trust is not a pertinent sentencing consideration unless the crime is committed by a public official.

{¶ 53} Appellant directs this court to *State v. Jones* (Nov. 13, 1998), Greene App. No. 98CA009, 1998 WL 864761; and *State v. Brewer* (Nov. 24, 2000), Hamilton App. No. C–000148, 2000 WL 1732335. Both cases support appellant's position and hold that the abuse of a position of trust provision set forth under R.C. 2929.13(B)(1)(d) applied only to public officials or public servants as defined by R.C. 2921.01(A) and (B) who commit offenses such as theft in office or bribery, and does not apply to private individuals who abuse a position of trust in connection with the victim.

{¶ 54}  In its decision, the court in *Brewer* cautioned that the unrestrained application of the phrase "position of trust" to every breach of ethical, moral, or filial duty by a private individual could distort the purpose of the new sentencing guidelines.  Such an interpretation of R.C. 2929.13(B)(1)(d), the court concluded, is not reasonably calculated to reflect the overriding purposes of felony sentencing and is at odds with the goal of Am.Sub.S.B. No. 2 and R.C. 2929.13(B) favoring non-prison terms for nonviolent offenders.  Nevertheless, the court in *Brewer* left open the possibility that under certain circumstances, a private individual's abuse of a position of trust could be of sufficient magnitude to warrant a more serious prison sentence.  Id. at 2.

{¶ 55}  Until now, this court had not addressed whether R.C. 2929.13(B)(1)(d) applies to public and private individuals alike.  Nevertheless, research indicates that other courts have and that significant dispute surrounds the proper application of this provision.  After reviewing the applicable statutory provision in light of the relevant authority, this court believes that the General Assembly intended R.C. 2929.13(B)(1)(d) to apply to circumstances like that presented in the instant case.

{¶ 56}  R.C. § 2929.13(B)(1)(d) requires the sentencing court to consider whether "[t]he offender held a public office or position of trust and the offense related to that office or position * * *." (Emphasis added.)  At the outset, the legislature's use of the word "or" instead of "and" in the context of this provision suggests that the provision was intended to apply to both public and private individuals.  *State v. Bolin* (Jan. 12, 1998), Clermont App. No. CA97–06–056, at 2, 1998 WL 8683. Various courts addressing this provision, however, disagree over the proper definition of a "position of trust" as set forth under R.C. 2929.13(B)(1)(d) and whether it extends equally to private as well as public individuals.

{¶ 57}  In discerning the meaning of a statute, words and phrases employed therein are to be read in context and construed according to rules of grammar and common usage unless the words or phrases have acquired a technical or particular meaning.  R.C. 1.42. Where a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters the following:

{¶ 58}  "(A)  The object sought to be attained;

{¶ 59}  "(B)  The circumstances under which the statute was enacted;

{¶ 60}  "(C)  The legislative history;

{¶ 61}  "(D)  The common law or former statutory provisions, including laws upon the same or similar subjects;

{¶ 62} "(E) The consequences of a particular construction; and

{¶ 63} "(F) The administrative construction of the statute." R.C. 1.49.

{¶ 64} Consistent with the aforementioned rules and the plain language employed in the statute, a majority of cases addressing this sentencing provision to date have construed the phrase "position of trust" set forth in R.C. 2929.13(B)(1)(d) to include both public and private persons where that position is related to or facilitated the commission of the offense. See, e.g., *State v. Flahive* (1998), 127 Ohio App.3d 32, 711 N.E.2d 746 (court found that offense of credit card theft was related to defendant's employment such that position of trust provision applied); *State v. Bailey* (Sept. 11, 1998), Ottawa App. No. OT–97–046, 1998 WL 603978 (sentence remanded for the trial court to determine whether there was a connection or "palpable nexus" between defendant's position as prison trustee and the offense of conviction); and *State v. Hall* (2000), 137 Ohio App.3d 666, 739 N.E.2d 846 (court held that a parent occupies a position of trust as contemplated under R.C. 2929.13(B)(1)(d) with respect to his child).

{¶ 65} Such a construction is consistent with previous holdings in this court. For example, when affirming a maximum prison sentence for the offense of gross sexual imposition, this court justified that decision in part because the defendant exploited his position of familial trust in order to commit the crime in *State v. Yoho* (Feb. 14, 2000), Belmont App. No. 99–BA–10, 2000 WL 179810. Similarly, in *State v. Woodburn* (Mar. 23, 1999), Columbiana App. No. 98 CO 6, 1999 WL 167848, this court affirmed the trial court's finding that the defendant was a sexual predator, based on the conclusion that he had abused a position of trust in committing the offense.

{¶ 66} Applying R.C. 2929.13(B)(1)(d) to private as well as public individuals under certain circumstances finds additional support in the federal sentencing guidelines. The guidelines are similar in some respects to Ohio's felony sentencing scheme and reflect an effort to remedy the same concerns. Certainly, they offer a sentencing model for this court. Addressing federal crimes exclusively, the guidelines operate by assigning points to crimes, assessing additional points for an array of aggravating and mitigating circumstances related to the offense and the offender. A sentence is then calculated based on the total number of points, which are then applied to a corresponding sentencing range. The higher the score, the longer the sentence.

{¶ 67} The guidelines set forth a series of victim-related adjustments that may be imposed to enhance a particular sentence. Section 3B1.3, entitled "Abuse of Position of Trust or Use of Special Skill," is similar in many ways to R.C. 2929.13(B)(1)(d). This section provides for the enhancement of an offender's sentence where the offender "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or

concealment of the offense." U.S.S.G. Section 3B1.3. The commentary relating to this section explains the application of enhancement as follows:

{¶ 68} " 'Public or private trust' refers to a position of public or private trust characterized by professional or managerial discretion. * * * Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature. For this enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense. * * * This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors." U.S.S.G. Section 3B1.3.

{¶ 69} As this commentary makes clear, the enhancement applies to both public and private individuals, specifically those who use their position of trust to carry out and conceal their crimes. Like the federal guidelines, Ohio's felony sentencing scheme recognizes that such conduct is more serious than garden-variety theft.

{¶ 70} In the instant case, as a family friend and personal secretary to the victim, appellant occupied such a position of trust. Appellant's special position with respect to the victim not only enabled her to repeatedly forge checks written on the victim's account, but it allowed her to conceal those thefts over an extended period of time. Appellant's behavior represents a quintessential abuse of that position. Under the circumstances, notwithstanding the authority cited by appellant to the contrary, this court affirms the trial court's conclusion that appellant's conduct fell under the auspices of R.C. 2929.13(B)(1)(d), and the trial court was warranted in imposing a more severe punishment.

{¶ 71} Given that the trial court properly considered relevant factors and stated its reason for imposing the maximum sentences, the record clearly and convincingly supports that court's determination that a maximum sentence was warranted in this case. Appellant's first assignment of error, therefore, will be overruled.

{¶ 72} In her second assignment of error, appellant complains:

{¶ 73} "The trial court erred in imposing consecutive terms of incarceration."

{¶ 74} Appellant maintains that the trial court violated R.C. 2929.14(B) when it sentenced her to five consecutive one-year prison terms. Further, in

failing to make the requisite findings in support of such a sentence, the trial court also violated R.C. 2929.14(C).

{¶ 75} Appellant's second assignment of error has merit. The imposition of consecutive sentences is governed by R.C. 2929.14(E)(4). That section provides as follows:

{¶ 76} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

{¶ 77} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

{¶ 78} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

{¶ 79} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 80} In addition to issuing findings in support of its decision to impose consecutive sentences, under R.C. 2929.19(B)(2)(c), the trial court must also detail the reasons that underlie such a finding. While the court's "findings" essentially set forth its conclusions based on a consideration of the facts of a case and relevant statutory factors, a statement of "reasons" requires a judge to set forth the facts and circumstances considered, the importance attached to them and the processes by which those facts and circumstances led to the conclusions reached. *State v. Beranek* (Dec. 14, 2000), Cuyahoga App. No. 76260, 2000 WL 1867254.

{¶ 81} Neither the written judgment entry memorializing the sentencing decision nor the transcript of the sentencing proceeding reflect any findings or specifics underpinning the trial court's decision to impose not one, but five consecutive sentences in this case.

{¶ 82} In a failed effort to extract such findings from the record, appellee directs us to the following remarks made to appellant's father at sentencing:

{¶ 83} "I just cannot allow this to go on because she scammed her employer. She scammed you. She scammed a bank. And when you scam people, especially

when you are using cash, it affects everything that goes on in this world. You have to be punished. And she's going to get punished."

{¶ 84}    Appellee also argues that the court justified the consecutive sentences when it found that, "while awaiting sentencing, [appellant] opened an account at the Home Savings and Loan using checks she knew were drawn on a closed account."

{¶ 85}    While the aforementioned comments do demonstrate the trial court's abhorrence for appellant's conduct, they do not comport with the requirements of R.C. 2929.14 and 2929.19(B)(2)(c).   Because the trial court's findings under R.C. 2929.03, 2929.04, 2929.11, 2929.12, 2929.14, and 2929.19, in effect, determine the sentence that is ultimately imposed, any sentence lacking these findings is both incomplete and invalid.   *State v. Martin* (1999), 136 Ohio App.3d 355, 362, 736 N.E.2d 907; *State v. Hay* (Dec. 19, 2000), Union County App. No. 14–2000–24, 2000 WL 1852725; *State v. Bonanno* (June 24, 1999), Allen App. Nos. 1–98–59 and 1–98–60, 1999 WL 446439; and *State v. De Amiches* (Mar. 1, 2001), Cuyahoga App. No. 77609, 2001 WL 210020.

{¶ 86}    A comprehensive review of the record reveals that the trial court issued no findings in connection with its decision to impose consecutive sentences beyond the imposition of the sentences themselves.   While appellant's conduct might have been reprehensible, the record, as it now stands, does not justify the imposition of both maximum and consecutive sentences.   Consecutive sentences are reserved for the worst offenses and/or the worst offenders.   R.C. 2929.14(E)(4)(a) through (c).   There is simply nothing currently before this court to indicate that appellant's crimes were so great or unusual that no single prison term would adequately reflect the seriousness of the conduct.   See *State v. Anderson* (2001), 146 Ohio App.3d 427, 2001-Ohio-4297, 766 N.E.2d 1005.

{¶ 87}    Nor can this court ground the consecutive sentences imposed here under R.C. 2929.14(E)(4)(c).   Appellee proposes that appellant became eligible for consecutive sentences under this provision when she ostensibly opened a new account with checks drawn on a closed account while awaiting sentencing on this case.   R.C. 2929.14(E)(4)(c) provides for the imposition of consecutive sentences where the offender's criminal history demonstrates that they are necessary to protect the public.   The information concerning this alleged criminal activity was provided to the trial court in the PSI. This may have prompted or at least contributed to the trial court's decision to impose consecutive sentences.   Without findings from the trial court, however, this court can only speculate about the role the information contained in the PSI played in the sentencing determination.

{¶ 88}   This court is also reluctant to rely on such allegations as a basis for consecutive sentences pursuant to R.C. 2929.14(E)(4)(c) for several additional reasons.   First, the record now before this court provides no details about the incident and its aftermath.   Second, the record indicates that appellant had no criminal history beyond the offenses of conviction.   Third, appellant does not appear to have been charged, much less convicted, in connection with the later incident.   Fourth, the PSI investigator who reported the incident still apparently recommended that the trial court impose a community control sanction notwithstanding the subsequent alleged misconduct.

{¶ 89}   Appellant embezzled in excess of $50,000.00 from her employer over a period of approximately six months, ostensibly to purchase a house because her credit was bad.   Although the victim maintained that he would never know the true extent of his financial loss, at the time of sentencing, appellant (admittedly through her father) had made substantial, if not complete, restitution.   In addition, appellant, through counsel, advised the court that the issue of restitution could remain open in the event the victim determined that his losses exceeded what had been paid.   In the absence of additional information and specific findings, the crimes that appellant committed in this case and the circumstances surrounding them do not appear to call for a punishment as severe as the one imposed.

{¶ 90}   Accordingly, in light of the foregoing, this court affirms the judgment of the trial court to the extent that it imposed maximum sentences for the offenses to which appellant entered her guilty plea.   This court nevertheless reverses the sentencing in part, vacating appellant's consecutive sentences that were ordered without the appropriate findings, and remands this matter for further proceedings in accordance with the law and consistent with this opinion.

Judgment accordingly.

VUKOVICH, P.J., and DEGENARO, J., concur.