JOURNAL ENTRY and OPINION
{¶ 1} Appellant Kareem Ali appeals from his convictions for murder with a firearm specification, aggravated robbery with a three year gun specification, and having a weapon while under disability. He assigns the following errors for our review:
 {¶ 2} "I. The trial court erred when it allowed an incriminating statement that was suppressed by the prosecutor to be admitted at trial and the prosecution violated Mr. Ali's constitutional rights under Article One, Section 10 of the Ohio Constitution and the Due Process Clause of theFourteenth Amendment to the United States Constitution when the prosecution failed to disclose to the defense the incriminating statements made by Ali."
 {¶ 3} "II. Appellant Ali's convictions were not supported by sufficient evidence in violation of the Fifth andFourteenth Amendments to the United States Constitution and Article I, Section 10, to the Ohio Constitution."
 {¶ 4} "III. The trial court erred when it imposed more than the minimum terms of imprisonment on Mr. Ali, a first offender, without making the necessary findings required by R.C.2929.14(B)."
 {¶ 5} "IV. The trial court erred by ordering consecutive sentences when it failed to make any of the necessary findings or reasons for the findings required by R.C. 2929.14(E)(4)."
 {¶ 6} Having reviewed the record and the legal arguments of the parties, we affirm Ali's conviction in part and vacate the sentence and remand for resentencing. The apposite facts follow.
 {¶ 7} During the evening of January 16, 2001, Salim Lababidi was shot and killed during the robbery of his grocery store located at 1962 West 58th Street. The robbery and murder were recorded on the security videotape at the store. The tape clearly showed Ali and his co-defendant Damien Perry holding up the store. Perry held the gun to the victim's head. Ali pointed the gun from across the counter at the victim and then reached into the opened cash register drawer. The film shows a struggle with the victim by both Perry and Ali and then the victim is left on the ground while the two robbers fled the scene.
 {¶ 8} Ali's co-defendant, Damien Perry, testified he pled guilty to aggravated murder with specifications and aggravated robbery. He was sentenced to a term of thirty-eight years to life.
 {¶ 9} According to Perry, he planned the robbery of the store with Carmelita Seay, a friend of his who lived across the street from the store. He stated he and Ali were at her apartment on January 16, 2001, smoking marijuana cigarettes laced with PCP. At that time, Perry came up with the idea to rob a store and Seay suggested the store across the street would be easy to rob.
 {¶ 10} Perry parked his car next to the store. He then retrieved three semiautomatic handguns from the car. He gave a .25 semiautomatic handgun to Ali and kept two guns for himself, a .9 semiautomatic handgun and a .22 semiautomatic handgun. According to Perry, Seay went into the store first to make sure no customers were in there. After she was done, he and Ali entered the store, where Perry immediately ran behind the counter to where the victim was and held a gun to the victim's head and ordered him to open the cash register drawer. Perry stated that Ali stood across from the counter, pointing the gun at the victim, and when the victim opened the drawer, Ali grabbed money from the drawer. Perry testified that he was distracted at this time and did not watch what the victim was doing. He then noticed the victim had a gun. Perry began struggling with the victim. The victim then shot the gun several times. Along with shooting Perry in the stomach, the victim also shot Ali in the shoulder and the groin. Ali came around behind the counter and shot the victim. The victim went limp and the two ran out of the store. Perry stated that he did not know that Ali had shot the victim.
 {¶ 11} After leaving the store, the two went to Perry's girlfriend's house, Dawn Butler. She bandaged them as best as she could and then because of the severity of Perry's stomach wound, they drove to the hospital. While in the car, Perry said that Ali asked him why he didn't shoot him. Perry had no idea how much money they stole because Ali kept the money.
 {¶ 12} Co-defendant Carmelita Seay testified that she pled guilty to aggravated robbery with a firearm specification, but that she had not yet been sentenced. According to Seay, although Perry and Ali talked about robbing the store, she did not take them seriously. She denied casing the store for them. After talking with Perry and Ali, Seay, high on PCP, went to a friend of hers. While walking home after visiting the friend, she heard that the victim, who she was acquainted with, had been shot. She ran into the store and saw the victim on the floor. After taking his pulse, she called 911.
 {¶ 13} Seay also testified that although she did not get high with Ali that day, he appeared to have been under the influence of drugs and smelled like PCP.
 {¶ 14} Dawn Perry, aka Dawn Butler, testified that at the time of the robbery she was Perry's girlfriend, and has since married him. According to Butler, Perry and Ali had been friends since childhood. Butler claimed that it was obvious that Ali was slow and that when they were in school, Perry was in classes for the learning disabled. Butler also stated that Ali and Perry often smoked PCP together.
 {¶ 15} Butler testified that after the robbery, both Ali and Perry came to her house. After helping bandage them as best as she could, she took Perry to the hospital. Because Butler's ten year old daughter was with them, she did not ask the details of how they were shot. They simply told her they had been robbed. She did hear Ali ask Perry, "Why didn't you shoot him?" While Perry was in the hospital, he told her what had happened. Perry told Butler that Ali had reflexively shot back at the victim after the victim had shot him. The next day, Butler and Ali disposed of the guns in various spots on the east side of Cleveland Butler noticed that Ali was very "shaky" and he was acting scared. After disposing of the guns, Butler went to the police in an attempt to clear Perry because she knew he was not the one who shot the store owner.
 {¶ 16} Rose Gray was a girlfriend of Ali's. The day after the robbery, Ali and Butler came to her house and she drove around with them, while they threw away bags of "trash." She did not know the bags contained guns. Gray also stated that Ali did not have a learning disability but seemed to be of normal intelligence.
 {¶ 17} Melita Shannon, another of Ali's girlfriends, testified that on the evening of the robbery, Ali arrived at her apartment after midnight and claimed that he had been robbed. She did not see blood on Ali's clothing or in the bathroom and he told her he was not shot. She noticed he seemed to have a lot of pain in his shoulder. Shannon let Ali spend the night on her couch and when he got up the next day, he looked as if he was in pain. Shannon learned of the robbery when the police came to her apartment looking for Ali. She later told Ali to turn himself in, and he complied and was immediately arrested.
 {¶ 18} Shannon also testified over objection that she had a conversation with Ali while he was in jail. During this conversation, he admitted to shooting the victim, but stated that he did not mean to kill the victim, but he shot his gun due to the reflex of his finger after being shot himself. Shannon told Ali his explanation did not make sense.
 {¶ 19} The coroner testified that the victim died from two gunshot wounds, one to the shoulder and one to the chest. The coroner removed two .25 caliber pellets from the body.
 {¶ 20} Based on the above evidence, Ali was found guilty of the lesser included offense of felony murder with a three year gun specification and aggravated robbery with a three year gun specification. The trial court separately found Ali guilty of having a weapon while under disability since this count was bifurcated from the trial. Ali was sentenced to maximum, consecutive terms of imprisonment, totaling twenty-eight years to life.
 {¶ 21} In his first assigned error, Ali argues the trial court erred by allowing Melita Shannon to testify to statements Ali made to her after being arrested. Shannon testified Ali told her that he shot the victim but did not mean to kill him. He told her he pulled the trigger due to a reflexive action by his finger after he was shot. According to Ali, the prosecutor should have disclosed these statements to defense counsel prior to trial pursuant to Crim.R. 16.
 {¶ 22} Crim.R. 16 states that upon motion of defendant, the prosecutor must disclose:
 {¶ 23} "(i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;
 {¶ 24} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;
 {¶ 25} "(iii) Recorded testimony of the defendant or co-defendant before a grand jury."
 {¶ 26} Ali's statements to Shannon do not fit any of these categories. Ali's statements were not written or recorded, nor were they made to the grand jury. The statements were also not made by the defendant to the prosecutor or a law enforcement officer, but a statement he made to his girlfriend. Therefore, none of the classifications under Crim.R. 16 apply. Because the statement was not exculpatory, the prosecutor did not have a duty to disclose the statement made by defendant to a witness.[1]
 {¶ 27} Further, a review of the voir dire of Shannon indicates she never told the prosecutor during discovery what Ali told her. She merely indicated that she had a conversation with Ali after he was arrested. The prosecutor did not ask her what Ali actually said to her until she testified at trial. Therefore, prior to trial, there was nothing to disclose.
 {¶ 28} Accordingly, Ali's first assigned error has no merit and is overruled.
 {¶ 29} In his second assigned error, Ali contends his murder conviction was not supported by sufficient evidence. Ali refers to defense counsel's motion for acquittal at trial as the basis of this argument. A review of the record indicates that at trial, Ali's attorney motioned for acquittal based on the fact there was insufficient evidence that Ali purposefully caused the victim's death, because the testimony indicated the murder occurred after the robbery "went bad" and that it was never Ali's intention to kill the store owner. Defense counsel therefore requested an acquittal "as relates to an aggravated murder with a felony-murder specification."[2]
 {¶ 30} Although Ali points to this argument in support of his assigned error, Ali was not convicted of aggravated murder, but the lesser included offense of felony murder pursuant to R.C.2903.02(B). The jury was therefore not convinced that Ali acted purposely in killing the victim. R.C. 2903.02(B) does not require that Ali had the intent to purposely kill the victim.[3]
 {¶ 31} Pursuant to R.C. 2903.02(B), the elements of murder are defined as:
 {¶ 32} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or2903.04 of the Revised Code."
 {¶ 33} In State v. Jenks,[4] the court set forth the following standard for our review of a sufficiency challenge:
 {¶ 34} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 35} The evidence in the instant case established that Ali shot the store owner when he attempted to defend his store from being robbed by shooting at Ali and Perry. This sufficiently supports Ali's conviction for felony-murder pursuant to R.C.2903.02(B).
 {¶ 36} Ali's second assigned error is overruled.
 {¶ 37} In his third assigned error, Ali, who had never served a prison term before, argues the trial court erred by imposing more than the minimum sentence without making the requisite findings pursuant to R.C. 2929.14(B).
 {¶ 38} The relevant provisions of R.C. 2929.14 state:
 {¶ 39} (B) Except as provided in division (C), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."(Emphasis added.)
 {¶ 40} Since the trial court imposed the maximum sentence pursuant to R.C. 2929.14(C), which is specifically excepted from the requirements of R.C. 2929.14(B), the trial did not have to make the requisite findings required by R.C. 2929.14(B) in imposing more than the minimum. As this court in State v.Gladden[5] held, "once a trial court makes the requisite findings justifying a maximum term of incarceration under R.C.2929.14(C), it thereafter is not required to justify its reasons for imposing more than the minimum term of incarceration, in spite of the offender's status as an offender who previously had not served a prison term."
 {¶ 41} Ali's third assigned error is overruled.
 {¶ 42} In his fourth assigned error, Ali contends the trial court erred by imposing consecutive sentences without making the requisite findings pursuant to R.C. 2929.14(E)(4), or providing the reasons in support thereof. Ali argues the court failed to state that the consecutive sentence was not disproportionate to the danger he posed to the public and failed to provide reasons in support of the sentence.
 {¶ 43} In imposing consecutive prison terms for convictions of multiple offenses, the trial court must make certain findings enumerated in R.C. 2929.14(E)(4). R.C. 2929.14(E)(4) states:
 {¶ 44} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 45} "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18
of the Revised Code, or was under post-release control for a prior offense.
 {¶ 46} "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 47} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 48} Along with making the above findings, the trial court must also state its reasons on the record why it is imposing the consecutive sentence.[6]
 {¶ 49} In the instant case, in imposing consecutive sentences, the trial court stated:
 {¶ 50} "I'm going to order that the sentence be consecutive to the other sentence for the murder and firearm specification in Count 1 because I think that is necessary both to protect the public and punish the offender for his conduct.
 {¶ 51} "And I do not find these sentences are disproportionate to the seriousness of the offender's conduct. In fact, Mr. Perry, who is the codefendant accomplice in this crime, entered a plea to 38 years to life in the penitentiary, so the best comparative sentence for me is what Mr. Perry is serving. * * *
 {¶ 52} "Let me also state for the record that the harm caused by this offense, these offenses, rather is so great and unusual that no single term of incarceration for any single offense would be adequate to reflect the seriousness of Mr. Ali's conduct."[7]
 {¶ 53} Although the trial court did find that the consecutive sentence was necessary to protect the public, it failed to state the sentence was not disproportional to the danger Ali posed. It also failed to state its reasons in support of this finding as required pursuant to R.C. 2929.19(B)(2)(c). The court instead merely compared Ali's sentence with that of his codefendant Perry and mentioned the harm was "so great and unusual" a single term was not adequate to reflect the seriousness of Ali's conduct. Although the trial court's finding Ali's conduct caused great or unusual harm is a finding in support of consecutive sentences (R.C. 2929.14(E)(4)(b)), the comparison of Ali's sentence with that of his co-defendant is not. Instead, it is a finding pursuant to R.C. 2929.11(B), regarding the necessity to impose a sentence which is consistent with other similar offenders, in satisfying the overall purpose of felony sentencing.
 {¶ 54} Based on the facts of the case, we could surmise why the consecutive sentence was necessary, however, R.C.2929.19(B)(2)(c) specifically requires the trial court to state its reasons in support thereof at the hearing. As the Ohio Supreme Court in State v. Comer[8] recently held:
 {¶ 55} "[W]e hold that pursuant to R.C. 2929.14(E)(4) and2929.19(B)(2)(c), when imposing consecutive sentences, a trial court is required to make the statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing. "Moreover, requiring the court to make these findings and give its reasons at the sentencing hearing comports with case law and with the purposes and intent of S.B.2. Consecutive sentences are reserved for the worst offenses and offenders. State v. Boland
(2002), 147 Ohio App.3d 151, 162, 2002-Ohio-1163, 768 N.E.2d 1250
* * *.
 {¶ 56} "Finally, our holding has a practical application as well. All interested parties are present at the hearing. Thus, an in-court explanation gives counsel the opportunity to correct obvious errors. Moreover, an in-court explanation encourages judges to decide how the statutory factors apply to the facts of the case."[9]
 {¶ 57} Pursuant to the above excerpt, along with requiring the trial court to explicitly set forth its reasons in support of its findings, the Supreme Court has also assigned a dual role to both the judge and counsel.[10] The judge is to state its findings and reasons in support of the sentence, and counsel then has the opportunity to challenge the trial court's findings and reasons that counsel believes to be in error.[11]
 {¶ 58} Because the trial court failed to find that the sentence was not disproportionate to the danger posed by Ali to the public and failed to sufficiently set forth its reasons in support of a consecutive sentence, Ali's fourth assigned error has merit and is sustained. We therefore vacate the sentence and remand for resentencing.
 {¶ 59} Although the dissent contends that we should merely remand for the trial court to enter its findings pursuant to R.C.2929.14(E), we disagree. The dissent relies on R.C. 2953.08(G)(1) which states as follows:
 {¶ 60} "If the sentencing court was required to make the findings required by division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section2929.20 of the Revised Code relative to the imposition or modification of the sentence, and if the sentencing court failed to state the required findings on the record, the court hearing an appeal under division (A), (B), or (C) of this section shallremand the case to the sentencing court and instruct thesentencing court to state, on the record, the requiredfindings." (Emphasis added.)
 {¶ 61} We do not read the language in this provision as preventing us from vacating the sentence and remanding for resentencing. In fact, pursuant to R.C. 2953.08(G)(2), we may vacate the sentence. R.C. 2953.08(G)(2) provides:
 {¶ 62} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
 {¶ 63} "The appellate court may * * * vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 64} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section2929.20 of the Revised Code, whichever, if any, is relevant.
 {¶ 65} "(b) That the sentence is otherwise contrary to law."
 {¶ 66} By failing to state the required statutory findings and reasons, we believe Ali's sentence was imposed "contrary to law." As the court in State v. Kennedy[12] stated,
 {¶ 67} "`[C]ontrary to law sensibly means a sentencing decision that ignores an issue or factor which a statute requires a court to consider. Griffin and Katz, Ohio Felony Sentencing Law (2002 Ed.), § 9.7 `Where a sentencing court fails to make findings required in R.C. 2929.13 or R.C. 2929.14 * * * or fails to set forth reasons when reasons are required under R.C.2929.19, the sentence is contrary to law.' Id. at p. 779, citing State v. Edmonson, 86 Ohio St.3d 324, 715 N.E.2d 131,1999-Ohio-110."
 {¶ 68} Further, vacating the entire sentence and remanding for resentencing gives the trial court the opportunity to reconsider the sentence it imposed if it finds a consecutive sentence is not supported by the requisite findings and accompanying reasons. As the Ohio Supreme Court in State v.Comer[13] held: "Pursuant to R.C. 2929.11 through 2929.19, the trial court must follow an articulated process when determining a sentence. The individual provisions of the sentencing scheme may not be read alone." Also by vacating the sentencing and requiring the defendant to be resentenced, the trial court is required to have the defendant present and allows counsel the opportunity to correct any obvious errors of the trial court. A simple remand for the trial court to set forth its findings and reasons in support of a consecutive sentence would not necessarily have these same safeguards and may lead the trial court to simply issue journal entry opinions with the requisite findings, which would be in contravention of the Supreme Court's holding in Comer.
 {¶ 69} We, therefore, conclude vacating Ali's sentence and remanding for resentencing is appropriate.
 {¶ 70} Judgment affirmed in part, sentence vacated and remanded for resentencing.
 O. Calabrese, Jr., J., concurs.
 KENNETH A. ROCCO, P.J., CONCURS IN PART AND DISSENTS IN PARTWITH ATTACHED SEPARATE OPINION.
[1] State v. Stewart (1996), 111 Ohio App.3d 525; State v.Bey (1999), 85 Ohio St.3d 487.
[2] Transcript at 2223.
[3] See, State v. Muntaser, Cuyahoga App. No. 81915; 2003-Ohio-5809 ("Ohio's felony murder statute, R.C. 2903.02(B) does not require any purpose or specific intent to cause death.")
[4] (1991), 61 Ohio St.3d 259, paragraph two of syllabus, citing Jackson v. Virginia (1979), 443 U.S. 307.
[5] (Jan. 4, 2001), Cuyahoga App. No. 76908, citing, State v.Sherman (May 20, 1999), Cuyahoga App. No. 74297; State v.Delaney, (Aug. 20, 1999), Hamilton App. No. C-981017.
[6] State v. Anderson (2001), 146 Ohio App.3d 427; State v.McGee, Cuyahoga App. No. 77463; 2001-Ohio-4238.
[7] Tr. at 2370-2371.
[8] 99 Ohio St.3d 463, 2003-Ohio-4165.
[9] Id. at P20-P22.
[10] We note that pursuant to the Sup. Court Rep. R. 1(B)(1): "The law stated in a Supreme Court opinion is contained within its syllabus (if one is provided), and its text, including footnotes."
[11] The Court in Comer also held that the court is to align its findings with its reasons. This not only assists in our review of the case, but would also assist the attorney in challenging the trial court's findings and reasons in support thereof. Comer may well be the catalyst for requiring both the State and the defense to file sentencing briefs and the court to issue memoranda from said briefs.
[12] 2nd Dist. No. 19635, 2003-Ohio-4844, P10.
[13] 99 Ohio St.3d at P10.