JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Casildo Diaz appeals his conviction and sentencing for rape, kidnapping, and felonious assault. Defendant entered into a common-law marriage with the victim's mother when the victim was one-year-old. The victim and her brother lived with defendant for the remainder of their childhood and he raised them as their stepfather. When the victim was twelve-years-old, defendant took her into a van and raped her. He then warned her that if she told anyone, he would kill both her mother and himself. Over the course of the next six years, defendant raped the victim repeatedly, either when no one else was at home or while they were asleep. When the victim was seventeen, defendant impregnated her. Although he wanted her to get an abortion, her pregnancy was too far advanced. She had a baby girl. At defendant's instruction, she told her mother that another person was the father of the child.
 {¶ 2} When the victim was twenty-four, she tried to take her daughter and move out of defendant's home. Defendant held the victim, her daughter, and the victim's mother at gunpoint for several hours before letting them go. The women and child then managed to escape by taxi and moved out of town.
 {¶ 3} After the victim moved away, defendant initiated paternity proceedings for the victim's daughter so he could gain custody. A DNA test showed him to be the father of the child. At that point, the victim told her aunt that defendant was the child's father and revealed the history of the multiple rapes. The aunt persuaded the victim to go to the authorities and accompanied the victim to the police station where she relayed the situation to the police. Defendant was arrested and tried by a jury who found him guilty of twenty of the sixty charged rapes as well as of three counts of kidnapping and one count of felonious assault for the incident in which he held the victim, her mother and her daughter at gunpoint. Both the kidnapping and felonious assault convictions included a firearm specification. Defendant states nine assignments of error on appeal, the first of which states:
The trial court erred in denying appellant's motion to dismiss the counts of the indictment which were barred by the statute of limitations.
 {¶ 4} The victim reached the age of majority on January 25, 1994, which triggered the running of the statute of limitations. Defendant was not indicted on the charges until December 27, 2001, nearly eight years after the statute began to run. At the time the rapes were committed, the statute of limitations was six years. R.C. 2901.13. Effective March 9, 1999, however, the Ohio Legislature changed the statute of limitations for felonies including rape, gross sexual imposition, sexual battery and other sex crimes from six years to twenty years after the offense is committed.
 {¶ 5} Page's Ohio Revised Code Annotated indicates the following legislative history for this statute:
SECTION 3. Section 2901.13 of the Revised Code, as amended by this act, applies to an offense committed on and after the effective date of this act and applies to an offense committed prior to the effective date of this act if prosecution for that offense was not barred under section 2901.13 of the Revised Code as it existed on the day prior to the effective date of this act.[1]
 {¶ 6} The legislature intended, therefore, that the lengthened statute of limitations apply to crimes committed prior to the amendment so long as the statute of limitations had not expired at the time the amendment took effect.
 {¶ 7} The statute of limitations under the six-year limit would have expired on the crimes in question six years after the victim's birthday on January 25, 1994, or on January 25, 2000. The amendment, however, became effective in 1999. These crimes are, therefore, clearly among those intended to be governed by the twenty-year statute of limitations as explained by the legislature.
 {¶ 8} Alternatively, defendant argues that the legislature's actions are unconstitutional as an ex post facto law. His analysis of what constitutes an ex post facto law, however, is flawed. This court has explained how the Constitution limits a retrospective law:
Article I, Section 10 of the United States Constitution forbids the state from passing any ex post facto laws. To violate the ex post facto clause, the law must be retrospective so that it applies to events occurring before its enactment and it must disadvantage the person affected by altering the definition ofcriminal conduct or increasing the punishment for the crime.
* * * The clause prohibits the enactment of any law that criminalizes conduct which was innocent and not punishable at the time it was committed; or that makes the crime more serious than it was when committed; or that inflicts a greater punishment than that prescribed at the time the crime was committed; or that alters the legal rules of evidence either by requiring less or different evidence in order to convict or by eliminating a defense available when the crime was committed.
 {¶ 9} State v. Glaude (September 2, 1999), Cuyahoga App. No. 73757, 1999 Ohio App. LEXIS 4076, at *10, citations omitted, emphasis added.
 {¶ 10} A change in the statute of limitations is not one of the changes specified in Glaude. The elements of the crime, the punishment for the crime, its seriousness and the evidence required to prove the crime, as delineated in Glaude as constituting factors triggering an ex post facto issue, are unchanged by the new statute in the case at bar. Defendant nonetheless claims that his rights were violated because the passage of time may have obscured some of the basic facts needed to prove or defend the case.
 {¶ 11} We disagree. The particular change in the statute of limitations here does not qualify as a basis to invalidate the amendment to the law. "While amended R.C. 2901.13 deprives appellant of the six [sic] year limitations period in effect when the offense occurred, it did not deprive him of a defense within the meaning of the ex post facto clause. The term `defense' * * * refers only to statutes which withdraw `defenses related to the definition of the crime, or to matters which a defendant might plead as justification or excuse" for a crime.'" State v.Perez, Stark App. No. 2002CA00218, 2003-Ohio-542, _9, quotingUnited States v. Brechtel (C.A. 5, 1993), 997 F.2d 1108, 1113.
 {¶ 12} The U.S. Supreme Court clarified the issue of ex post facto laws in instances in which a legislature extends a statute of limitations. The Court held that "a law enacted afterexpiration of a previously applicable period violates the ExPost Facto Clause when it is applied to revive a previously time-barred prosecution." Stogner v. California (2003), 2003 U.S. LEXIS 5011 at * 46, emphasis added. The Court noted, however, that courts "have upheld extensions of unexpired
statutes of limitation (extensions that our holding today does not affect * * *)." Id. at *21, emphasis in the original. In the case at bar the statute of limitations had not expired when defendant was indicted, and, therefore, was not unconstitutionally applied. This assignment of error is without merit.
 {¶ 13} For his second assignment of error, defendant states:
The trial court erred in denying appellant's motion for supplemental discovery of the victim's medical records.
 {¶ 14} Defendant argues that he had requested but was denied the victim's medical records for the time she gave birth to her daughter. He claims that these records would have shown that his paternity of the child was common knowledge and that therefore the statute of limitations would have begun to run sooner. He argues that these records also would have shown that the sex which resulted in the pregnancy was consensual. A major part of defendant's case relied on his claim that he had sex with the victim only once and that that encounter had resulted in the pregnancy.
 {¶ 15} Defendant incorrectly claims that the trial court denied him discovery of the medical records. Initially, the court stated that no records existed. Defense counsel replied, however: "I'm sure that there's records about when the child was given birth. I mean, she went to the hospital. Those have to exist." Tr. at 11. The trial judge then responded that if defense counsel prepared a subpoena for the records, she would sign it. Defense counsel has not shown, however, that he ever prepared a subpoena or presented one to the court for signature. Counsel cannot now argue that the court prevented him from obtaining the records when he failed to follow the procedure the court specified for him to access them. This assignment of error is without merit.
 {¶ 16} For his third assignment of error, defendant states:
The State of Ohio Committed Prosecutorial misconduct by referring to prior bad acts of appellant as evidence that he must have committed the offense charged, in violation of Evid.R. 404(b).
 {¶ 17} Defendant claims he was prejudiced by the prosecutor's references in closing argument to other "bad acts" which biased the jury against him. The statements defendant objects to both arise from defendant's admission that he is the father of the victim's child.
 {¶ 18} Defendant did not object to the prosecutor's statements at the time they were made during closing argument. We review this assignment of error, therefore, under the plain error standard. State v. Long (1978), 53 Ohio St.3d 91.
 {¶ 19} The comments which defendant objects to include the following:
So, you folks, you know, one thing is for sure, folks, you know, that when [the victim] was seventeen years of age she had intercourse with this man. Whether it was one time or more, it certainly was one time.
So you are going to have to decide from the age of twelve to seventeen did she also have intercourse with him.
If you can have sex with a seventeen-year-old, that you viewed upon as a stepdaughter, I submit you can have sexual intercourse with a sixteen-year-old that you viewed as a stepdaughter, or fifteen, or fourteen.
I don't know what this man is capable of, but you'll have to decide."
 {¶ 20} Tr. at 737. The prosecutor made the same argument earlier in his closing.
 {¶ 21} "Generally, extrinsic acts may not be used to provide an inference that the accused acted in conformity with his other acts or that he is inclined to act in such a manner. * * * However, if the other acts `tend to show' by substantial proof any of the exceptions enumerated in the rule or statute, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible." State v. Broom
(1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus, citations omitted.
 {¶ 22} In the case at bar, defendant is not objecting to the admission of the evidence that he fathered the victim's child. He stipulated to this fact prior to trial. Tr. 15. He also personally testified that he had fathered the child, although he claimed that this was his only sexual contact with the victim. He is arguing now only that the prosecutor should not have mentioned it in closing argument as a basis for finding defendant guilty of other counts of rape.
 {¶ 23} In State v. Cuevas (Sept. 18, 1991), Lorain App. No. 91CA005043, the court held that it was not error to allow other child victims of defendant's sexual abuse to testify concerning his acts with them at a trial for alleged abuse of another child. The court held that their testimony was admissible because it tended to show defendant's scheme or plan in soliciting young girls. Similarly, here, the fact that defendant, while living in the victim's home as her stepfather, had sex with her once shows his opportunity — an opportunity created by his position of trust as her stepfather. See also, State v. Broom ((1988),40 Ohio St.3d 227. The prosecutor properly focused on the defendant's betrayal of his relationship to the victim as his "stepdaughter" and especially her young age. Finally, the prosecutor stepped back and told the jury that it, not he, would have to decide whether defendant had committed the other rapes alleged. Even if the stipulation to one of the charges of rape in this case constitutes "evidence of other crimes,"[2] and it is not altogether clear that it is, the prosecutor's comments fit the exception to the exclusion.
 {¶ 24} Further, defendant fails to provide any law to support his assertion that the prosecutor should have been limited in his closing comments regarding evidence properly in the record. Nor does he prove that his fathering of the child was evidence which was not properly in the record.
The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. * * * In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. * * * An appellate court should also consider whether the misconduct was an isolated incident in an otherwise properly tried case. * * * Misconduct of a prosecutor at trial will not be considered grounds for reversal unless the conduct deprives the defendant of a fair trial. * * *
 {¶ 25} A prosecutor is afforded wide latitude in closing arguments. State v. Braxton (1995), 102 Ohio App.3d 28, 41-42, citations omitted.
 {¶ 26} In the case at bar, defendant has failed to show, first, that the prosecutor's remarks do not fit the exception to the exclusion; second, that any objection was made to the remarks; and, third, that defendant has satisfied the plain error standard by showing the outcome of the trial would have been different without the prosecutor's remarks. We note, moreover, that if defense counsel wished to limit the prosecutor's use of testimony his own client gave, then the defense should have asked for a limiting instruction. Accordingly, this assignment of error is without merit.
 {¶ 27} For his fourth assignment of error, defendant states:
Appellant prejudiced [sic] by the trial court's failure to advise the jury of the appropriate law in response to the question posed by the jury during deliberations.
 {¶ 28} During its deliberations, the jury sent a question asking, "[i]s it a crime to have consensual sex with a minor under the age of eighteen?" Defense counsel argued that the court should have answered the question "no," whereas the prosecutor and court both noted that the answer was dependent on the circumstances of the case. After discussing the question with counsel, and noting defense counsel's objection, the court instructed the jury that "the Court has given you all of the applicable law that's necessary for you to resolve this case. You must apply that law to the facts as you find the facts to be." The jury proceeded to convict defendant of twenty counts of rape occurring between the years of 1989 and 1993. They acquitted him of rapes occurring before the victim was thirteen and during and after 1994, while she was seventeen and older.[3] Defense counsel did not object to the initial instructions and did not request any additional instructions until the jury asked this question. Nor did defense counsel argue that the answer to the jury's question was not contained in the jury instructions which the jury had with them in the jury room. Rather, defense counsel asked the court to give a specific answer separate from the rest of its jury instructions.
 {¶ 29} We review this assignment of error under an abuse of discretion standard. When, "during the course of its deliberations, a jury requests further instruction, or clarification of instructions previously given, a trial court has discretion to determine its response to that request. A reversal of a conviction based upon a trial court's response to such a request requires a showing that the trial court abused its discretion." State v. Carter (1995), 72 Ohio St.3d 545, 553.
 {¶ 30} The court's instruction regarding the use of force during rape included the following statement:
When the relationship between the victim and the defendant is one of a child or parent, or stepparent, the element of force need not be openly displayed, or physically brutal. It can be subtle, or slight, and psychological, or emotionally powerful.
If you find beyond a reasonable doubt, that under the circumstances in evidence, the victim's will was overcome by fear, or duress, or intimidation, the element of force has been proved.
 {¶ 31} Tr. at 773-774. This instruction is both legally correct and adequate.
 {¶ 32} It would have been reasonable for the jury to decide she could not engage in consensual sex before the age of eighteen but that once the victim reached the age of majority her susceptibility to the authority of her stepfather was not sufficient to qualify as force.
 {¶ 33} The jury had the full law before it when it was deliberating. This assignment of error is without merit.
 {¶ 34} For his fifth assignment of error, defendant states:
The trial court erred in permitting sergeant shepard to corroborate the victim's version of events with inadmissible hearsay.
 {¶ 35} Defendant claims that because the officer who took the victim's statement when she first reported the crimes was permitted to testify concerning what she told him, over defense counsel's vehement objections, the testimony was inadmissible hearsay and, moreover, was prejudicial to defendant and deprived him of a fair trial. First, in his appellate brief, defendant has failed to specifically identify the allegedly inadmissible portions of the record. According to App.R. 12(A)(2), "[t]he court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *." It is not the role of the appellate court to search the record for instances of error that the party has failed to identify. This assignment of error could be overruled solely because defendant failed to properly cite to the record.
 {¶ 36} Even if defendant had properly identified the offending passages, however, his assignment of error would be without merit. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).
 {¶ 37} The admission of hearsay testimony is an error with constitutional ramifications:
As noted by the United States Supreme Court, hearsay violates the Confrontation Clause of the United States Constitution unless it comes within a firmly rooted exception or contains other indicia of reliability. White v. Illinois (1992), 502 U.S. 346,356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859. Thus, any error in admitting this hearsay would be constitutional error. In order to find constitutional error harmless, this court must find beyond a reasonable doubt that the error did not contribute to the verdict. Chapman v. California (1967), 386 U.S. 18, 24,87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-711."
 {¶ 38} State v. Johnson (1994), 71 Ohio St.3d 332, 339. Similarly, here, any inadmissible hearsay would have constitutional ramifications. Addressing "whether this violation of appellant's right to confrontation is grounds for reversal of his conviction," the Ohio Supreme Court cited the following ruling by the United States Supreme Court:
As we have stressed on more than one occasion, the Constitution entitles a criminal defendant to a fair trial, not a perfect one. E.g., United States v. Hasting, 461 U.S. 499, 508-509 (1983);Burton v. United States, 391 U.S. 123, 135 (1968). In Chapmanv. California, 386 U.S. 18 (1967)], this court rejected the argument that all federal constitutional errors, regardless of their nature or the circumstances of the case, require reversal of a judgment of conviction. The Court reasoned that in the context of a particular case, certain constitutional errors, no less than other errors, may have been `harmless' in terms of their effect on the fact-finding process at trial. SinceChapman, we have repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt. E.g., United States v. Hasting, supra (improper comment on defendant's silence at trial); Moore v. Illinois, 434 U.S. 220,232 (1977) (admission of identification obtained in violation of right to counsel); Harrington v. California, [395 U.S. 250
(1969)] (admission of nontestifying codefendant's statement). The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, * * * and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) ('Reversal for error, regardless of its effect on the judgment, encourages litigators to abuse the judicial process and bestirs the public to ridicule it')."Delaware v. Van Arsdall (1986), 475 U.S. 673, 681.
 {¶ 39} The United States Supreme Court went on to conclude that violations of the Confrontation Clause "[do] not fit within the limited category of constitutional errors that are deemed prejudicial in every case." Id. at 682. Consistent with the foregoing, this court stated the following in paragraphs three and six of the syllabus in State v. Williams (1983),6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323:
 {¶ 40} To be deemed nonprejudicial, error of constitutional dimension must be harmless beyond a reasonable doubt.
 {¶ 41} Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt.
 {¶ 42} State v. Williams (1988), 38 Ohio St.3d 346, 349.
 {¶ 43} In Williams, the trial court had allowed into evidence, over defense counsel's objections, a hearsay statement from a witness who refused to testify. The Ohio Supreme Court ruled that despite the inadmissibility of this statement, because the remaining evidence against defendant was overwhelming, the admission of this statement was harmless error. The Court pointed out that errors in a trial were "virtually inevitable." Id. at 349.
 {¶ 44} The next step then is to "determine whether [the errors] were harmless beyond a reasonable doubt. In order to meet this standard, there must be `no reasonable possibility that the evidence may have contributed to the accused's conviction * * *.DeMarco at 195, 509 N.E.2d at 1260. To arrive at this conclusion, there must either be overwhelming evidence of the accused's guilt or `some other indicia that the errors did not contribute to the conviction.'" State v. Griffin,142 Ohio App.3d 65, 80.
 {¶ 45} In the case at bar, the victim testified at length concerning defendant's numerous crimes against her. Further, defendant himself admitted to fathering the victim's child, although he claimed that the sex was consensual and not rape. The victim's mother testified that she and the children lived in great fear of defendant, that he often pulled knives or guns on them, and that every time she tried to leave him he found her and forced her back home. Given this atmosphere of fear in the home, it is very believable that defendant could have intimidated the victim into cooperating with him over the course of her childhood.
 {¶ 46} Even without looking at the hearsay testimony of the officer, we find the evidence against defendant overwhelming. A review of the rest of the testimony demonstrates beyond a reasonable doubt that defendant is guilty. Even if defendant had cited us to the record, therefore, the officer's testimony in this matter would be harmless error. Accordingly, this assignment of error is overruled.
 {¶ 47} For his sixth assignment of error, defendant states:
The trial court erred in denying appellant's motion for a new trial when newly discovered evidence was presented which supported the consensual nature of the offenses.
 {¶ 48} After the jury had reached its guilty verdict, defendant "discovered" a videotape he had made of himself having sex with the victim. He requested the court to order a new trial so that this tape could be presented to the jury as proof that the sex he had with the victim was consensual. After viewing the tape, the court denied the request. Defendant admitted that the encounter in which the tape was made was a separate incident from the one in which the victim was impregnated. In fact, he admitted that he had sex with the victim numerous times, but that the sex was consensual.
 {¶ 49} The trial court correctly noted that defendant had testified at trial that the only time he had intercourse with the victim was when she conceived the child. Only after that defense failed and he was convicted, did defendant introduce the defense that the victim consented to multiple instances of intercourse. It was in his motion for new trial that he first argued the alleged consensual nature of multiple instances of intercourse with the victim.
 {¶ 50} A defendant may file a motion for a new trial pursuant to Crim.R. 33. In order to qualify for a new trial because of newly discovered evidence, however, the rule requires that the new evidence be evidence that "defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6). The courts have delineated three requirements for qualification for new trial. "[A]ppellant must meet three requirements of Crim.R. 33(A)(6) to prevail. First, appellant must have used reasonable diligence in trying to find the evidence. Second, appellant must present affidavits to inform the trial court of the substance of the evidence that would be used if a new trial were to be granted. Third, the evidence presented must be of such weight that a different result would be reached at the second trial." State v. Shepard (1983),13 Ohio App.3d 117, 118.
 {¶ 51} In his motion for new trial, defendant states only that the evidence consists of "a recently discovered/produced videotape of the defendant and the victim." Motion filed 8-14-02. At the hearing, defendant presented no proof that this tape was not available prior to the trial. Rather, he testified that he had forgotten about it until after his conviction. He told the court that he then asked his sister to retrieve the tape from the drawer under his waterbed so she could provide it to his attorney.
 {¶ 52} "The decision whether to grant a new trial on grounds of newly discovered evidence falls within the sound discretion of the trial court." State v. Lamar (2002), 95 Ohio St.3d 181; 2002-Ohio-2128, at 197. It was not an abuse of discretion to decide that the tape was not "newly discovered," when it had been in defendant's possession all along. It was not as though someone else had made the tape or it had been lost. He specifically informed his sister while he was in jail what drawer the tape was in.
 {¶ 53} Additionally, the court noted after reviewing the tape that, rather than proving the sex was consensual, the tape served to highlight the coercive nature of defendant's actions. In fact, the court stated that it was "unfortunate that we didn't have the video during the course of the trial because I think that had they shown the video he would have been convicted of the kiddie rapes." Tr. at 857.
 {¶ 54} Defendant has failed to show that the tape could not have been discovered prior to trial. His excuse that he "forgot about it" is not adequate reason to grant a new trial. Furthermore, he has failed to prove that using the tape during trial would have resulted in a different outcome which would have been favorable to him. The trial court did not err, therefore, in denying defendant's motion for new trial. This assignment of error is without merit.
 {¶ 55} For his seventh assignment of error, defendant states:
The trial court erred in sentencing appellant to twenty consecutive terms of ten to twenty-five years under pre-senate bill 2 law.
 {¶ 56} All twenty counts of rape for which defendant was convicted occurred prior to July 1, 1996. The sentences imposed for those crimes, therefore, are subject to the law as it existed prior to Senate Bill 2. When sentencing a defendant for an offense which occurred prior to Senate Bill 2, the court must comply with sentencing law as it existed prior to the Act. Defendant argues that the consecutive sentences of ten to twenty-five years imposed by the court for each of the twenty counts of rape exceeded the amount of time permitted under pre-Senate Bill 2 sentencing law. Defendant neither cites nor attaches the correct statute. The state, however, provided this court with the correct citation, R.C. 2929.41, which, until July 1, 1996, stated in pertinent part:
 {¶ 57} "Consecutive terms of imprisonment imposed shall not exceed:
 {¶ 58} "* * *
 {¶ 59} "(2) An aggregate minimum term of fifteen years * * * when the consecutive terms imposed are for felonies other than aggravated murder or murder * * *." R.C. 2929.41(E).
 {¶ 60} Regardless of whether the court erred in its imposition of consecutive sentences, any error in the court's consecutive sentencing for these crimes is not reversible. The Ohio Supreme Court has held that the pre-Senate Bill 2 version of R.C. 2929.41 is self-executing; "where a trial court's sentence exceeds the minimum established by consecutive terms, such a judgment is not the basis of reversible error, as the terms of former R.C. 2929.41(E)(3), now (E)(2), are self-executing, automatically operating to limit the aggregate minimum sentencing to fifteen years." State v. White (1985), 18 Ohio St.3d 340,341. Defendant will not serve, therefore, any longer sentence than was statutorily permitted by the pre-Senate Bill 2 law. This assignment of error is without merit.
 {¶ 61} For his eighth assignment of error, defendant states:
The trial court erred in sentencing appellant to maximum, consecutive terms of incarceration on counts sixty-one through sixty-four under post-senate Bill 2 law.
 {¶ 62} Counts sixty-one, sixty-two and sixty-three were the kidnapping of the victim, her daughter, and the victim's mother. Count sixty-four was for felonious assault. Defendant was sentenced to ten years for each of the three kidnapping convictions, to be served consecutively, and to eight years on the one felonious assault conviction, to be served consecutively to the kidnapping convictions, for a total of thirty-eight years. At a second hearing the court later amended its sentence to account for the firearm specifications: the court added three years for the firearm specification in each of the three kidnappings and three years for the firearm specification in the felonious assault. These firearm sentences were ordered to run concurrently with each other but consecutively to the other sentences, for a total of forty-one years. All these crimes were committed after July 1, 1996, so their sentences must comply with the new sentencing law.
 {¶ 63} Senate Bill 2 law requires the trial court to make findings when imposing more than the minimum sentence on an offender who has never served a prison term. A court must impose the minimum term unless the offender has already served a prison term or the court finds that the shortest term either would demean the seriousness of the offense or would not protect the public from harm adequately. R.C. 2929.14.[4]
 {¶ 64} The court in the case at bar stated:
The Court further finds the harm was so great and unusual that the maximum [sic][5] sentence for a single offense would not be commensurate with the seriousness of the offender's conduct and its impact upon the victim. When the Court considers the maximum sentence, the Court will consider the most serious offense and the time for it would not adequately punish the offender.
 {¶ 65} Tr. 846. But for the confusion of "maximum" for "minimum," this language would have satisfied the required finding that the seriousness of the offense requires more than the minimum sentence.
 {¶ 66} If a trial court makes the findings and gives the reasons for imposing the maximum sentence, however, some courts have held that these findings satisfy the requirements that the court consider the minimum sentence and find it not adequate. This issue is currently before the Ohio Supreme Court for resolution of the conflict. See State v. Evans (2003),98 Ohio St.3d 1508, certifying a conflict with State v. Zimmnerman
(Dec. 6, 2001), Cuyahoga App. No. 79011. If the trial court imposes the maximum sentence and/or consecutive sentences, it must give its reasons for its findings in support of these sentences. When imposing the maximum sentence, the court must make one of the following three findings: that the offender committed the worst form of the offense, that the offender poses the greatest likelihood of committing future crimes, or that the offender is either in a class of certain major drug offenders or in a class of certain repeat violent offenders. R.C. 2929.14(C). The court must also give its reasons. R.C. 2929.19(B)(2)(c) and (e).
 {¶ 67} If the court imposes consecutive sentences, it must make the following findings:
(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. (Emphasis added.)
 {¶ 68} For the rape crimes, the court in the case at bar made all the necessary findings and gave the required reasons for its imposition of sentence. When it imposed the sentences for the kidnappings and felonious assault, the court stated that it "incorporates its findings it previously made into the kidnapping and felonious assault cases." Prior to the court's addressing these other charges, the court made the following findings concerning the rape charges: that defendant was at high risk for recidivism because he had a previous conviction and did not show remorse for his crimes, that the event was very serious because the victim was injured mentally or physically because of her age, and that she had suffered severe physical, psychological, or economic harm as a result of the crimes. The court made all the necessary findings to comply with the law when it imposed maximum and consecutive sentences.
 {¶ 69} The court's reasons for these findings, however, address only the rape crimes. Its reasons were, as noted above, that the victim was uneducable because of the trauma of the rapes and the severe psychological harm they caused. The court noted that the victim "has had some difficulties with learning as a result of these events * * *." Tr. at 845. These reasons do not relate to the crimes of kidnapping or felonious assault nor does the court address the impact of those crimes on the other two victims, the mother and daughter of the primary victim in this case. The law requires the trial court to give reasons for findings on each crime, and the reasons must be aligned to each crime. State v. Comer (2003), 99 Ohio St.3d 463;2003-Ohio-4165. We remand, therefore, for resentencing.
 {¶ 70} Although the trial court correctly sentenced defendant on the rape conviction, "[t]he court of appeals does not have the power to vacate just a portion of a sentence. * * * Therefore, when a case is remanded for resentencing, the trial court must conduct a complete sentencing hearing and must approach resentencing as an independent proceeding complete with all applicable procedures." State v. Gray, Cuyahoga App. No. 81474, 2003-Ohio-436, ¶ 12.
 {¶ 71} This court has previously explained,
* * * the purpose of resentencing is to allow the judge to consider all relevant factors and make all applicable findings with accompanying reasons in the same proceeding, thus aiding both clarity and consistency. This is not accomplished by the blanket incorporation of a previous sentencing transcript without discussing its contents, a practice which only serves to cloud the question of whether the judge is fulfilling her duty to "consider the record" [citation omitted] in a new proceeding. At a sentencing following remand it is mandatory that the relevant findings and supporting reasons are addressed and considered both in relation to one another and in their totality. Without limiting the statutory requirements or mandating particular proceedings, we find that relevant portions of the previous sentencing may be read into the record or summarized on resentencing, * * * but a judge should be careful to ensure that prior determinations are not simply adopted without showing that they have been considered anew.
 {¶ 72} State v. Steimle, 2002-Ohio-2238 ¶ 17.
 {¶ 73} As we previously stated in State v. Fair, (2004) Cuyahoga App. No. 83378, 2004-Ohio-2971, Steimle further clarified the nature of a resentencing hearing:
An order vacating a sentence and remanding for resentencing requires a judge to conduct a new sentencing hearing at which all relevant factors are again considered, victims are notified, the defendant is present and allowed to speak, and the appropriate sentence is considered and imposed anew." ¶ 14, citing R.C.2929.19(A)(1); accord State v. Bolling, (July 19, 2001), Cuyahoga App. No. 78632. In Steimle, this court expressly rejected a "remand for resentencing as somehow limited.
In support, Steimle quoted R.C. 2929.19(A)(1), which states: The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony and before resentencing an offender who was convicted of or pleaded guilty to a felony and whose case was remanded pursuant to R.C. 2953.07 or 2953.08 of the Revised Code." The court explained: "This provision requires a judge to hold a new sentencing hearing, including all applicable procedures, whenever a sentence is remanded. Fair, ¶ 19.
 {¶ 74} We disagree with the dissent's interpretation ofState v. Gray, 2003-Ohio-436. In Gray, this court, citing toSteimle and State v. Bolton (2001), 143 Ohio App.3d 185,188-189, expressly denied the only basis on which a case could be returned as a limited remand for a partial resentencing. Gray
explained: "The court of appeals does not have the power to vacate just a portion of a sentence." (Emphasis added.) Gray,
¶ 12. This principle is the basis for requiring an independent hearing upon remand The legislature has specified the actions an appellate court may take: it may "increase, reduce, or otherwise modify a sentence that is appealed under this section or mayvacate the sentence and remand the matter to the sentencing court for resentencing." R.C. 2934.08 (G)(2). Emphasis added.
 {¶ 75} Whereas a court may impose multiple prison terms for multiple offenses, they are all included under one sentence.
See the language of R.C. 2953.08(A)(1)(b). Courts have commonly referred to "consecutive sentences"; however, the statute uses the word "terms" as in "the service of prisonterms
consecutively." R.C. 2929.14(E)(4). Emphasis added. Similarly, post-release control is included in the sentence; it is not a separate sentence. See R.C. 2929.14(F).
 {¶ 76} The language of the sentencing statute does not support the interpretation that a sentence may be chopped up and remanded piecemeal to the trial court for resentencing. A resentencing hearing is not like a salad bar in which one can return to add another garnish to the salad. Fair, ¶¶ 21-23.
 {¶ 77} A case remanded is like a steak returned to the chef because it was well done when it was ordered rare. It is necessary to begin again with a new piece of meat.
 {¶ 78} * * * [W]hen a case is remanded for resentencing, the trial court must conduct a complete sentencing hearing and must approach resentencing as an independent proceeding complete with all applicable procedures.
 {¶ 79} Gray, supra, ¶ 12. See, also, State v. Kareem Ali,
Cuyahoga App. No. 82076, 2004-Ohio-1782, ¶¶ 58-68.
 {¶ 80} In Fair the same dissent also relied upon an amendment to R.C. 2953.08(G)(1), which states that if the court fails to provide required findings in certain instances, for example imposing consecutive sentences, the appellate court shall remand the case for the lower court to "state, on the record, the required findings." R.C. 2953.08(G)(1). First, this statement does not say that on remand the court need address only those required findings it failed to make. Fair, ¶ 25.
 {¶ 81} Second, the statute does not distinguish between approved and defective findings. Rather the statute requires the case be remanded for "required findings," which would include even those previously approved on appellate review. This statute simply does not address, much less explain, the nature and full extent of a resentencing hearing.
 {¶ 82} In Fair we cited one example to show the obvious limitations of the statute. A case that is remanded for a failure to specify the required findings is also likely to have failed to provide reasons in support of a required finding. Thus, when such reasons are required, as they are in giving consecutive sentences, it would be an absurdity to remand the case and require the trial court to provide only "required findings" and nothing more. But such an interpretation logically follows if R.C. 2953.08(G)(1) is used to define the nature and extent of the resentencing hearing. In fact, in the case at bar this court previously found the court erred in not providing reasons. Sending the case back only for "required findings" would not cure the lack of reasons.
 {¶ 83} It is not clear what the intent of this statute is. Section .08(G)(1) does not include maximum sentences. Rather, as Griffin and Katz, observe, it is limited to:
 {¶ 84} RC 2929.13(B) — sentencing fourth or fifth degree felons to prison,
 {¶ 85} RC 2929.13(D) — not sentencing first or second degree felons to prison,
 {¶ 86} RC 2929.14(E)(4) — imposing non-mandatory consecutive sentences, and
 {¶ 87} RC 2929.20(H) — judicial release for first and second degree felons.
 {¶ 88} Ohio Felony Sentencing Law (2003 Edition) T 10.18, 10.19.
 {¶ 89} Fair, ¶¶ 26-36.
 {¶ 90} Griffin and Katz interpret 2953.08(G)(1) as limiting what an appellate court can do when it finds that the trial court failed to make requisite findings under the statutes listed above. They explain this statute by contrasting it to what appellate courts can usually do. Otherwise, when it determines required findings were not made, the appellate court "is empowered to increase, reduce, or modify the sentence." Section 10:19. Griffin and Katz cite to the case of State v. Jones
(2001), 93 Ohio St.3d 391, 400, which reversed a decision in which this appellate court had modified the trial court's sentence rather than remand the case. Citing to the current version of R.C. 2953.08, the Ohio Supreme Court explained that "the court of appeals should have given the trial court an opportunity to explain the reason for the sentence it imposed." At 400. Fair, ¶ 27.
 {¶ 91} The Supreme Court of Ohio, therefore, interpreted the amendment as limiting the appellate court's ability to modify a sentence. The amendment does not address what kind of hearing should be held when the case is remanded.
 {¶ 92} The entire sentence is, therefore, vacated and the case remanded for resentencing in accordance with the statute.
 {¶ 93} For his final assignment of error, defendant states:
The trial court erred in denying appellant's Crim.R. 29 motion for dismissal of the rape counts as the evidence presented was insufficient to support the offenses as charged.
 {¶ 94} Defendant argues that the state failed to produce sufficient evidence to support his conviction for the crimes. When considering the sufficiency of the evidence, the appellate court views the evidence in a light most favorable to the prosecution. If the evidence is such that any rational trier of fact could find that the state proved all the essential elements of the crime beyond a reasonable doubt, then this argument must fail. State v. Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 95} In the case at bar, defendant was convicted of rape of his stepdaughter; kidnapping of his common-law wife, his stepdaughter, and her daughter; and felonious assault on all three. In this assignment of error, defendant challenges only the rape convictions. Pursuant to App.R. 12(A)(2), we will address only the sufficiency of the rape crimes.
 {¶ 96} Defendant argues that the state's evidence was insufficient because it failed to prove the element of force. Specifically, he claims that the victim's testimony concerning force was unreliable because she was not specific about the dates and locations of each instance of rape. This argument lacks merit. It is unreasonable to expect anyone to provide exact dates for numerous events which occurred up to ten years earlier, particularly when the witness was a child at the time of the events. Similarly, given the numerous occurrences of rape, it is unrealistic for the witness to be able to describe the place of each occurrence.
 {¶ 97} He also alleges that the victim's memory was too vague and inconsistent to prove the number of instances of rape on which he was convicted. We found, however, that the victim's testimony was consistent and detailed. She described the nature of the sexual activity between them, the length of time defendant forced her to have relations with him, and her fear of defendant — a fear that motivated her to lie about the identity of the baby's father. The testimony of the victim's mother corroborated the victim's statement that defendant had instilled great fear in the entire family. The existence of this pervasive fear in the household, coupled with the victim's testimony, provides a consistent evidentiary pattern. We find that the victim's testimony provided sufficient evidence, which, if believed, would prove beyond a reasonable doubt that defendant was guilty of these crimes. This assignment of error is without merit.
 {¶ 98} Affirmed in part, reversed in part and remanded for resentencing.
 {¶ 99} It is ordered that appellee and appellant split the costs herein taxed.
 {¶ 100} The court finds there were reasonable grounds for this appeal.
 {¶ 101} It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
 {¶ 102} A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., Concurs.
 Rocco, P.J., Concurs and Dissents with separate Concurring andDissenting Opinion.
[1] The statute of limitations under the prior version of the statute was six years. The new statute of limitations applied because the statute of limitations for the crime in the case at bar did not expire until after the new statute took effect on March 9, 1999. The twenty-year statute of limitations still began at the same time the original statute had begun, that is, at the time the victim turned eighteen.
[2] We pass over the question of whether the stipulation here is "evidence of other crimes."
[3] The victim turned eighteen during 1994.
[4] The statute states in pertinent part:
if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
[5] Since the court sentenced defendant to the maximum, the court presumably intended to say "minimum" here.