[Cite as *State v. Roberts*, 2017-Ohio-9014.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 104474

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DOUGLAS ROBERTS

DEFENDANT-APPELLANT

## JUDGMENT:
### AFFIRMED; REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-12-561797-A, CR-13-578409-A, CR-14-584010-A,
CR-14-584791-A, and CR-14-586073-A

**BEFORE:** S. Gallagher, J., McCormack, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** December 14, 2017

**ATTORNEY FOR APPELLANT**

Erin R. Flanagan
Erin R. Flanagan, Esq., Ltd.
75 Public Square, Suite 920
Cleveland, Ohio    44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Anthony Thomas Miranda
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

**{¶1}** Douglas Roberts, also known as Franklin Jenkins, appeals the imposition of consecutive sentences following a limited remand in *State v. Jenkins*, 8th Dist. Cuyahoga No. 101899, 2015-Ohio-2762. Roberts claims that the record does not support the R.C. 2929.14(C)(4) finding that consecutive service of his multiple sentences is proportionate to the seriousness of the offender's conduct and the danger the offender poses to the public. The parties also agree that there is a typographical error in the final sentencing entry. We affirm the conviction but remand for the limited purpose of issuing a nunc pro tunc entry to correct the clerical error.

**{¶2}** In *Jenkins*, the imposition of consecutive sentences, culminating in the aggregate prison term of 18 years and 11 months, was reversed under the authority of *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, because the trial court had not made the second finding under R.C. 2929.14(C)(4) — that the consecutive sentences would not be "disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public." Upon remand, the trial court made the omitted finding and reimposed the original, aggregate term.

**{¶3}** Roberts appeals once again, and accordingly, we adopt the facts as stated from *Jenkins*:

> The sentence resulted after [Roberts's] guilty pleas in five separate cases, and included consecutive terms.
>
> In the first case, Cuyahoga C.P. No. CR-[12]-561797-A, [Roberts] pled to robbery. He was originally sentenced to community control sanctions and ordered to participate in a community-based treatment

program. The trial court informed him that he would be sentenced to a four-year prison term if he violated his community control sanctions.

[Roberts's] second case was Cuyahoga C.P. No. CR-[13]-578409-A, in which he pled to breaking and entering. The trial court sentenced him to an 11-month prison term, but suspended the sentence so that he could continue to participate in the treatment program. The court continued his community control sanctions for 18 months, to run consecutive to the first case.

Several months later, [Roberts] entered guilty pleas in three other separate cases. In Cuyahoga C.P. No. CR-14-584010-A, he pled to escape; in Cuyahoga C.P. No. CR-14-586073-A, he pled to two counts of burglary; and in Cuyahoga C.P. No. CR-14-584791-A, he pled to burglary with a notice of prior conviction specification.

In August 2014, the trial court held a sentencing hearing. The court terminated [Roberts's] community control sanctions in Case Nos. CR-[12]-561797-A and CR-[13]-578409-A, and sentenced him to four years and 11 months, respectively, on those cases. In Case No. CR-14-584010-A, [Roberts] was sentenced to six months; in Case No. CR-14-586073-A, he was sentenced to seven years on each of the two burglary counts, to be served concurrent to each other; and in Case No. CR-14-584791-A, he was sentenced to seven years. With the exception of the six-month sentence in Case No. CR-14-584010-A and the concurrent terms on the two burglary charges in Case No. CR-14-586073-A, the trial court ordered all the other terms to be served consecutively, for an aggregate sentence of 18 years and 11 months.

*Jenkins* at ¶ 2-6. Thus, the 18-year, 11-month aggregate prison sentence was not the maximum aggregate term at the trial court's disposal.

{¶4} In his second, third, and fourth assignments of error, Roberts challenges the validity of the underlying sentences, claiming (1) the prior conviction specification was contrary to law because the trial court did not rule on or reference the qualifying conviction at the resentencing hearing; (2) the trial court erred in imposing costs in the resentencing entry although the costs were properly imposed in the original sentencing;

and (3) the trial court erred in ordering restitution in the resentencing hearing without first establishing the amounts due through evidence introduced at the resentencing hearing.

{¶5} We cannot address those three assigned errors, all of which challenge aspects of the underlying sentence that were not part of the limited remand. *Jenkins,* 8th Dist. Cuyahoga No. 101899, 2015-Ohio-2762, at ¶ 12. "It is well recognized that the doctrine of res judicata bars claims that were raised or could have been raised on direct appeal." *State v. Fountain*, 8th Dist. Cuyahoga Nos. 92772 and 92874, 2010-Ohio-1202, ¶ 9, citing *State v. Davis*, 119 Ohio St.3d 422, 2008-Ohio-4608, 894 N.E.2d 1221. The trial court was without authority to address anything but the consecutive sentencing findings. *State v. Ferrell*, 8th Dist. Cuyahoga No. 100659, 2014-Ohio-4377, ¶ 47; *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 22 (8th Dist.) ("the trial court is limited on remand to only the question raised regarding the required findings pursuant to R.C. 2929.14(C)(4) to justify consecutive sentences"). *Jenkins* remanded the matter solely for "the trial court to consider whether consecutive sentences are appropriate under R.C. 2929.14(C)(4), and, if so, to make the required findings on the record." *Jenkins* at ¶ 12, citing *Nia* at ¶ 22; *State v. Frost*, 8th Dist. Cuyahoga No. 100498, 2014-Ohio-2645, ¶ 10; *State v. Dennison*, 10th Dist. Franklin No. 15AP-592, 2016-Ohio-8361, ¶ 67.

{¶6} Having said that, the parties agree that there appears to be a typographical error in the final sentencing entry in Cuyahoga C.P. No. CR-14-586073-A. The trial court imposed restitution in the amount of $10,280.60 payable to one of the victims. The state and Roberts believe that amount should have been $1,028.60 as established at

the original sentencing hearing. A trial court retains continuing jurisdiction to correct clerical errors in a judgment by nunc pro tunc entry to reflect that which actually was decided. *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, 943 N.E.2d 1010, ¶ 13, citing *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 18-19, and Crim.R. 36 ("[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time"). Although Roberts failed to address this issue in *Jenkins,* in light of the state's concession, we remand for the limited purpose of issuing a nunc pro tunc sentencing entry to correct the restitution amount to reflect the restitution demonstrated at the original sentencing hearing. *See State v. McGee*, 8th Dist. Cuyahoga No. 104566, 2017-Ohio-1363, ¶ 10.

{¶7} In his first assignment of error, Roberts claims that the consecutive sentencing findings are not supported by the record. R.C. 2929.14(C)(4) authorizes the trial court to order consecutive sentences if, as is pertinent to this case, consecutive service (1) is necessary to protect the public from future crime or to punish the offender; (2) is not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and additionally, (3) if the offender committed the offense while awaiting trial or sentencing, under community control monitoring, or under postrelease control for a prior offense. *State v. Jones*, 8th Dist. Cuyahoga No. 104152, 2016-Ohio-8145, ¶ 5, citing *State v. Smeznik*, 8th Dist. Cuyahoga Nos. 103196 and 103197, 2016-Ohio-709, ¶ 6.

**{¶8}** The trial court made all the required findings, and Roberts is not challenging that aspect of his sentences. Instead, Roberts claims that the record does not support the second finding, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public because the trial court referred to his criminal history collectively as eight "aggravated burglaries." Further, Roberts claims that the trial court was required to find that the harm caused by the offenses was so great or unusual that no single prison term adequately reflected the seriousness of the offender's conduct under R.C. 2929.14(C)(4)(b).

**{¶9}** In this case, Roberts contends that the consecutive sentences were disproportionate to his conduct and the danger he poses to the public because the trial court could not conclude that the multiple offenses he committed while serving community control sanctions, were "so great and unusual that no single prison term for any of the offenses committed as part of any of the course of conduct adequately reflects the seriousness of the offender's conduct" under R.C. 2929.14(C)(4)(b). This conclusion, however, inappropriately combines the proportionality finding with another, independent finding, one that the trial court was not required to make in this particular case because it is undisputed that Roberts committed the new crimes while serving community control sanctions, under R.C. 2929.14(C)(4)(a). Only one of the subdivision (a)-(c) findings is necessary to support consecutive service of prison terms.

**{¶10}** Further, the off-the-cuff generalization of Roberts's history of criminal conduct is a minor distinction that does not undermine the trial court's ultimate

conclusion when the totality of the sentencing hearing is considered. If the court made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we "clearly and convincingly" find that the record does not support the court's findings. R.C. 2953.08(G)(2); *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 19 (8th Dist.). The statute is written in the negative; that is, an appellate court does not need to clearly and convincingly find that the record supports the findings in order to affirm, but instead must clearly and convincingly find that the record does not support the findings in order to reverse or modify a sentence. *Venes*; *State v. Higginbotham*, 10th Dist. Franklin Nos. 17AP-147 and 17AP-150, 2017-Ohio-7618, ¶ 11, citing *State v. Moore*, 11th Dist. Geauga No. 2014-G-3183, 2014-Ohio-5182, ¶ 29, and *State v. Hale*, 5th Dist. Perry No. 14-CA-00014, 2014-Ohio-5028; *State v. Timpe*, 12th Dist. Clermont No. CA2015-04-034, 2015-Ohio-5033, ¶ 9; *State v. Thompson*, 9th Dist. Wayne No. 15AP0016, 2016-Ohio-4689, ¶ 45; *State v. Creech*, 4th Dist. Scioto No. 16CA3730, 2017-Ohio-6951, ¶ 11; *State v. Cochran*, 2d Dist. Clark No. 2016-CA-33, 2017-Ohio-217, ¶ 7. This is a deferential standard of appellate review. *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 10.

{¶11} The record amply reflects that consecutive sentences are not disproportionate to Roberts's conduct or the danger he poses to the public. Roberts committed numerous burglaries, aggravated burglaries, robberies, receiving stolen property, and breaking and entering crimes against numerous victims over the span of his criminal career dating back to the mid-1980s. Most of that time was spent in prison.

Tr. 10:21-24.  To put this in perspective, at the end of 2004, Roberts pleaded guilty to burglary and was sentenced to two years in prison.  In 2006, Roberts reoffended and almost a year later was sentenced to five years in prison for two burglaries.  In 2012, Roberts pleaded guilty to robbery and was sentenced to community control.  In 2013, Roberts pleaded guilty to breaking and entering and was sentenced to an additional term of community control.  That led to the 2014 cases, which were the result of three more burglaries.

{¶12} That the trial court, in an aside, generalized Roberts's past convictions as aggravated burglaries does not undermine the proportionality finding because the trial court was expressly looking at the past offenses as being in the "same genre of conduct" as the current offenses.  The trial court was not focused on the aggravated nature of the crimes.  The record supports the trial court's finding.  More than ten of Roberts's convictions involved some form of burglary or theft offense.  As the trial court explained to Roberts,

> You break into people's homes. You deprive them of their safety, deprive them of their goods, and you continue to engage in the same conduct despite the fact you've been down to prison before, despite the fact that I gave you the opportunity to address that behavior through community sanctions. I don't believe it's disproportionate given the fact that you now have — I think it's eight aggravated burglaries. You've got an escape. You know, there's no changing your    behavior.

In context, the trial court's generalization does not amount to the proportionality finding not being supported by the record.  There must be more.  *See, e.g., State v. Spencer*, 8th Dist. Cuyahoga No. 101131, 2014-Ohio-5430, ¶ 12 (criminal nonsupport is not an

inherently violent crime, and when that fact is coupled with several misstated facts recounting the offender's criminal history and the lack of any criminal behavior for 24 years, it was clearly and convincingly found that the record did not support the finding that consecutive sentences imposed for three counts of criminal nonsupport were not disproportionate to the danger the offender posed to the public).

{¶13} In this case, we cannot conclude — much less by clear and convincing evidence find — that the record does not support the second finding that consecutive sentences are not disproportionate to Roberts's conduct and the danger he poses to the public. Roberts's history of criminal conduct demonstrates the need to prevent Roberts from harming the public through a lengthy incarceration. When Roberts is not incarcerated, he is burglarizing people's homes. The purpose of R.C. 2929.14(C)(4) is to prevent this type of career criminal from perpetuating a cycle of criminality upon the public. Moreover, R.C. 2929.12 provides that the sentencing court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised Code[,]" including the minimum sanction necessary to accomplish protecting the public from Roberts and others. In exercising that discretion, the trial court expressly considered the need to incapacitate Roberts as a serial burglar and the need to protect the public from being victimized by Roberts.

{¶14} In a similar case, a panel from this court affirmed a longer aggregate sentence for an offender who committed a similar number of burglaries while serving

community control sanctions. *State v. Aniton*, 8th Dist. Cuyahoga No. 102440, 2015-Ohio-4080, ¶ 4. Importantly, *Aniton* rejected the offender's argument that consecutive sentences should be reserved only for the worst offenders who commit offenses that actually injure the public. *Id.* at ¶ 15-16. The defendant had an extensive criminal history and one of drug dependency, but no violent offenses. *Id.* at ¶ 7-8. The victim of the home invasion, however, was traumatized and psychologically harmed. *Id.* at ¶ 16. The trial court expressed its disappointment in first granting leniency to the offender, who then committed several crimes while serving community control. *Id.* at ¶ 8. On these facts, it was easily concluded that not only did the defendant fail to demonstrate that the record did not support the findings with respect to his 21-year aggregate sentence, but that the trial court's consecutive sentence findings actually were "*clearly and convincingly* supported by the record." (Emphasis added.) *Id.* at ¶ 16.

**{¶15}** Similar to *Aniton*, Roberts has an extensive history of criminal conduct, Roberts traumatized his victims as a result of the home invasions, and the trial court noted its failed attempt to rehabilitate Roberts by imposing community control sanctions on the earlier offenses. More importantly, Roberts could have received a longer aggregate sentence, but the trial court imposed a shorter, aggregate term than the one affirmed in *Aniton*. Accordingly, we cannot clearly and convincingly find that the aggregate sentence is disproportionate to Roberts's criminal conduct in general and the danger he poses to the public by continually burglarizing homes and robbing victims. Roberts's first assignment of error is overruled.

{¶16} The dissent maintains that we should modify the consecutively imposed sentences to concurrent ones because the crimes committed were not inherently egregious or violent.[1]  We must caution against this mind-set.  Consecutive sentences are not imposed upon a consideration limited to the offender's conduct as it relates to the convictions.   In fact, even within the individual sentencing structure, the trial court may look beyond the offender's conduct as it relates to the charged crimes.  *State v. Steele*, 8th Dist. Cuyahoga No. 105085, 2017-Ohio-7605, ¶ 10.

{¶17} For the purpose of consecutive sentencing review, this concept is more pronounced.   "Conduct" under R.C. 2929.14(C)(4) is "understood 'to encompass more than just the facts supporting conviction on a particular offense.'"   *Dennison*, 10th Dist. Franklin No. 15AP-592, 2016-Ohio-8361, at ¶ 61, quoting *State v. Diaz*, 8th Dist. Cuyahoga No. 102582, 2015-Ohio-4382, ¶ 9.   The cumulative length of an offender's incarceration is "attributable to the *number* of offenses he committed."   (Emphasis sic.)

---

[1]   The dissent's approach to reviewing consecutive sentences exemplifies the need for a more defined appellate review process.   Nothing distinguishes Roberts's sentence from that affirmed in *Aniton*.   The dissent's review, however, somehow draws a distinction that Roberts is more deserving of leniency than the defendant in *Aniton* despite the similarities between the offenders, their conduct, and the trial court's conclusions.   This instills inconsistency within sentencing.   Until the legislature or the Supreme Court of Ohio steps in with a more definitive review process that ensures consistency, we should continue to adhere to the unambiguous language of R.C. 2953.08(G).   As the dissent notes, although there may have been an intent under Am.Sub.S.B. No. 2 to create a more expansive appellate review process, this recognition is decades late and in contravention of R.C. 2929.12 that affords discretion to the sentencing court to consider R.C. 2929.11.   As the Supreme Court of Ohio has definitively established, appellate courts must defer to the sentencing court based on the unambiguous language of R.C. 2953.08(G) and R.C. 2929.12.   *Rahab,* 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, at ¶ 10.   Whatever was the intent of the drafters, we are bound by the law that has developed.   If the legislature took issue with the court's interpretation of R.C. 2953.08 over the years, the statute could have been amended.

*State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 16. Thus, appellate courts must broadly review the entirety of the offender's criminal conduct in reviewing consecutive sentence findings. *State v. Moore*, 2014-Ohio-5135, 24 N.E.3d 1197, ¶ 33 (8th Dist.). Indeed, R.C. 2929.14(C)(4) provides in part that consecutive service may be imposed if the trial court finds "that consecutive sentences are not disproportionate to the seriousness of the *offender's conduct* and to the danger the offender poses to the public." (Emphasis added.) *Id.* "Had the legislature intended to limit appellate review to whether consecutive sentences are not disproportionate to the seriousness of the crime itself (as opposed to the offender's conduct and the danger the offender poses to the public) it could have done so." *Moore.*

{¶18} Roberts was not sentenced to more than 18 years in prison for stealing a bottle of Pepsi or for any other trivialized characterization of his individual crimes. Roberts's sentences on each of the individual offenses were less than the maximum ones authorized by law for each offense. Some of those individual terms were imposed to be served consecutively, meaning the aggregate term was imposed based on the number of offenses committed and Roberts's history of criminal behavior. The fact that the newest crimes may have been less severe than the ones he committed in the past is not dispositive — it merely is a factor for consideration. *See, e.g., Spencer*, 8th Dist. Cuyahoga No. 101131, 2014-Ohio-5430, at ¶ 12.

{¶19} "Meaningful review" of a sentence does not mean an appellate court reverses every sentence it disagrees with; it means the appellate panel considers the

arguments advanced as applied through the lens of the law. On that point, we defer to the trial court's discretion unless this court can clearly and convincingly find that the record does not support the consecutive sentencing findings. R.C. 2953.08(G)(2); *Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, at ¶ 10, citing *Wasman v. United States*, 468 U.S. 559, 563-564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984), and *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

{¶20} Within our standard of review under R.C. 2953.08(G), we must consider the trial court's discretion to sentence offenders. "[T]he sentencing statute [R.C. 2953.08] and case law reflect this deference." *Rahab* at ¶ 10; *Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, at ¶ 16; *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. Under R.C. 2953.08(G), we can reverse a sentence only if we clearly and convincingly find that the record does not support the findings. The trial court made the required findings and concluded that a lengthy incarceration was necessary and proportionate based on Roberts's extensive history of criminal conduct, the harm he caused to the public, and his inability to refrain from reoffending upon release from prison or while serving community control sanctions — among other considerations. The record supports the findings under R.C. 2929.14(C)(4), and the conviction is, therefore, affirmed. We affirm the conviction but remand for the limited purpose of issuing a nunc pro tunc entry to correct the clerical error.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for correction and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

TIM McCORMACK, P.J., CONCURS;
MARY J. BOYLE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

MARY J. BOYLE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶21} I respectfully concur in part and dissent in part.   I dissent on the first assignment of error, but concur with the remaining opinion.   It is my view that Roberts's sentence of almost 19 years in prison is not supported by the record and completely fails to consider the legislative intent of Ohio's comprehensive sentencing statutes.

**A. Standard of Review**

{¶22} Although the Ohio Supreme Court made clear in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, that our review of felony sentences is not an abuse of discretion, questions still remain as to what the actual scope of our review should be.   I believe that there is a troubling trend occurring throughout appellate courts in this state that will, if not reigned in by the Ohio Supreme Court, essentially eliminate

meaningful review of felony sentences. As one appellate judge stated, "'appellate review of sentencing is under assault.'" *State v. Beverly*, 2d Dist. Clark No. 2015-CA-71, 2016-Ohio-8078, ¶ 42 (Donovan, J., dissenting), quoting *More Than a Formality: The Case for Meaningful Substantive Reasonable Review*, 127 Harv.L.Rev. 951, 951 (2014). I could not agree more with the dissenting judge in *Beverly* that "[t]his assault is unjustified and contrary to legislative intent when we look at the legislative history of S.B. 2 and H.B. 86." *Id.*

{¶23} While the majority acknowledges that "there may have been an intent under Am.Sub.S.B. No. 2 to create a more expansive appellate review process," it states that any intent by S.B. 2 has essentially been obliterated by case law that has developed "over the years." The majority claims that if the legislature "took issue with the courts' interpretation of R.C. 2953.08," it could have done something about it. It is my view that the legislature has done something about it, and yet, courts continue to eradicate meaningful appellate review of felony sentences. A review of the Ohio's comprehensive sentencing scheme is necessary.

{¶24} Before Am.Sub.S.B. No. 2 ("S.B. 2") was enacted in 1996, courts had wide discretion to sentence an offender within the statutory sentencing provisions. *State v. Johnson*, 40 Ohio St.3d 130, 133-134, 532 N.E.2d 1295 (1988). Because of that, "sentencing decisions were generally subjected to an abuse of discretion standard, and appellate courts rarely disturbed a sentence imposed within statutory limits." *State v. Shryock*, 1st Dist. Hamilton No. C-961111, 1997 Ohio App. LEXIS 3494, 5-6 (Aug. 1,

1997).   A trial court's sentencing discretion, however, was "limited and circumscribed by the parameters imposed by the legislature."   *State v. Bowman*, 3d Dist. Hancock No. 5-90-11, 1990 Ohio App. LEXIS 3591, 4 (Aug. 6, 1990).

{¶25} For example, under these limited parameters, appellate courts would find an abuse of discretion and reverse a sentence if the trial court considered improper factors when sentencing a defendant.   *See State v. Smith*, 8th Dist. Cuyahoga No. 50145, 1986 Ohio App. LEXIS 5680 (Feb. 20, 1986) (defendant's sentence reversed because the trial court considered a conviction that had been previously vacated by the court of appeals). Appellate courts would also find that a trial court abused its discretion if the trial court failed to follow a mandatory duty prescribed by the legislature.   *See State v. Ragland*, 17 Ohio App.3d 221, 478 N.E.2d 1014 (2d Dist.1984) (sentence reversed because the trial court failed to follow a statutory sentencing mandate to give the defendant a choice if he wanted to be sentenced to the law in effect at the time of sentencing or at the time he committed the offense).   Finally, appellate courts would reverse consecutive sentences if the trial court failed to impose them according to the relevant statute at that time.   *See Hamilton v. Adkins*, 10 Ohio App.3d 217, 461 N.E.2d 319 (12th Dist.1983) (consecutive sentences reversed because trial court did not specify that the sentences be served consecutively, as required by former R.C. 2929.41); *Bowman* (sentence reversed when the trial court ordered that a sentence for a misdemeanor be served consecutively to a felony in violation of former R.C. 2929.41(A)).

**{¶26}** S.B. 2 was the first major crime reform bill in Ohio since 1974. Griffin & Katz, *Ohio Felony Sentencing Law* 1 (2002) ("Griffin & Katz"). This comprehensive bill changed the definitions of crimes and the sentencing scheme and provided "precise guidance for criminal sentencing within clearly defined constraints." *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, ¶ 10, citing Painter, *Appellate Review Under the New Felony Sentencing Guidelines: Where Do We Stand?*, 47 Cleve.St.L.Rev. 533, 537-538 (1999) ("Painter").

**{¶27}** S.B. 2 was enacted in part as a result of the growing concerns about prison overcrowding. Painter at 537. But also, "there was a notion that offenders received disparate sentences for the same crime in different sections of the state." *Id.*, citing Griffin and Katz, *Ohio Felony Sentencing Law* 1 (1998). Because of this, the Ohio Criminal Sentencing Commission was created to develop a sentencing policy "designed to enhance public safety by achieving certainty in sentencing, deterrence, and a reasonable use of correctional facilities, programs, services," and to "achieve fairness in sentencing." *Id.*

**{¶28}** A "hallmark" of S.B. 2 was appellate review of sentences. Under S.B. 2, "the law accords meaningful review of * * * sentencing decisions by the appellate courts." *Comer* at ¶ 10. Appellate review was "intended to ensure that offenders [were] sentenced consistently." Painter at 538. The legislature enacted R.C. 2953.08 to accomplish consistent sentencing through "meaningful appellate review." *Comer* at ¶ 10 ("'Meaningful review' means that an appellate court hearing an appeal of a felony

sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law."). Indeed, the most significant aspect of the new sentencing law was that trial courts no longer had unfettered discretion when sentencing offenders. Painter at 537-38.

{¶29} When the General Assembly first enacted R.C. 2953.08, however, it did not specify, as it does now, that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." *See* former R.C. 2953.08. The legislature initially provided little guidance, and because of this, appellate courts initially struggled with the degree of review that they needed to give to sentences. Painter at 540. The debate centered around whether appellate courts should apply a "deferential abuse-of-discretion standard" or "whether the courts should apply a more stringent standard." *Id*. at 540-541. "[A]t one time or another, appeals courts from every district suggested that there was an abuse-of-discretion standard." *Id*. at 541.

{¶30} The legislature finally "settled" the matter, effective October 10, 2000, when it amended R.C. 2953.08(G)(2) to add: "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." In his article, *Appellate Review Under the New Felony Sentencing Guidelines*, Painter, then a judge at the First Appellate District, explained that this amendment was "a key step to ending the inconsistent treatment that defendants were receiving in appellate districts throughout the state." *Id*. But Painter went on to "predict that appellate courts will continue to take differing

approaches to sentencing review." I wonder if Painter now knows how clairvoyant he actually was back in 1999.

**{¶31}** Although S.B. 2 "limited judicial discretion in imposing consecutive sentences [and other provisions not relevant here] and established a presumption in favor of concurrent sentences in former R.C. 2929.41(A)," the Ohio Supreme Court, in 2006, severed the consecutive sentence statute, struck the presumption in favor of concurrent sentences provided in R.C. 2929.41(A), and held that judges no longer had to make findings or give reasons for imposing consecutive sentences. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 97. It did so after recognizing that requiring trial judges to engage in judicial fact-finding prior to imposing consecutive sentences violated the Sixth Amendment right to trial by jury as construed by the United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

**{¶32}** But the Ohio Supreme Court later held that Ohio's consecutive sentencing statutes under S.B. 2 were not unconstitutional in light of a new United States Supreme Court case. *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶ 19-20, citing *Oregon v. Ice*, 555 U.S. 160, 168, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009). Less than a year after *Hodge*, the General Assembly enacted Am.Sub.H.B. No. 86 ("H.B. 86"), effective September 30, 2011, "with a legislative purpose to reduce the state's prison population and to save the associated costs of incarceration by diverting certain

offenders from prison and by shortening the terms of other offenders sentenced to prison." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 20, citing Ohio Legislative Service Commission, Fiscal Note & Local Impact Statement to Am.Sub.H.B. 86. This new legislation revived Ohio's statutory presumption in favor of concurrent sentences and further directed courts to make statutorily enumerated findings prior to imposing consecutive sentences. *See id.*

{¶33} After H.B. 86 became effective, appellate courts again struggled with what standard of review to apply when reviewing sentences and whether courts should apply an abuse of discretion standard. But as I stated at the outset, the Ohio Supreme Court settled that matter in *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. In the last couple of years, however, beginning with what appears to be a case from this district (before *Marcum*), *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453 (8th Dist.), courts have begun interpreting R.C. 2953.08 as "an extremely deferential standard of review." *Venes* at ¶ 21. This is highly alarming and somewhat puzzling, considering the history and purpose behind S.B. 2 and H.B. 86.

{¶34} There is no question that "'abuse of discretion' is the most deferential standard of review — next to no review at all." *In re D.T.*, 212 Ill.2d 347, 356 (Ill.2004). The General Assembly and the Ohio Supreme Court have made it abundantly clear that we do not review felony sentences for abuse of discretion. Rather, when reviewing a felony sentence, an appellate court must conduct a "meaningful review" of the trial court's sentencing decision. *Comer*, 99 Ohio St.3d 463, 2003-Ohio-463, 793

N.E.2d 473, at ¶ 10; *State v. Daughenbaugh*, 3d Dist. Wyandot No. 16-07-07, 2007-Ohio-5774, ¶ 8, citing *State v. Carter*, 11th Dist. Portage No. 2003-P-0007, 2004-Ohio-1181.

{¶35} "Meaningful review" means that we must review the entire record, including "[a]ny presentence, psychiatric, or other investigative report that was submitted to the court in writing before the sentence was imposed," the trial record, and any oral or written statements made to or by the court at the sentencing hearing. R.C. 2953.08(F)(1)-(3). And after reviewing the entire record, if we clearly and convincingly determine that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law," then we have the power to "increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." R.C. 2953.08(G)(2); *Comer* at ¶ 10; *Marcum* at ¶ 1.

{¶36} In *Venes*, 2013-Ohio-1891, 992 N.E.2d 453, this court stated at ¶ 20:

It is important to understand that the "clear and convincing" standard applied in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2) makes it clear that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." As a practical consideration, this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.

{¶37} Considering the legislative history and purpose behind S.B. 2 and the enactment of R.C. 2953.08(G)(2), as well as H.B. 86 reviving R.C. 2929.14(C)(4) and 2953.08(G)(2), this court could not have been more wrong in *Venes*. It is the abuse of discretion standard that prohibits appellate courts from substituting their judgment for that

of the trial judge — a standard explicitly rejected by the legislature and the Ohio Supreme

Court when reviewing felony sentences. *See Pons v. Ohio State Med. Bd.*, 66 Ohio

St.3d 619, 621, 614 N.E.2d 748 (1993) ("Absent an abuse of discretion on the part of the

trial court, a court of appeals may not substitute its judgment for those of the * * * trial

court."); *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 1.

{¶38} In the next paragraph of *Venes*, we then stated at ¶ 21:

> It is also important to understand that the clear and convincing standard
> used by R.C. 2953.08(G)(2) is written in the negative. It does not say that
> the trial judge must have clear and convincing evidence to support its
> findings. Instead, it is the court of appeals that must clearly and
> convincingly find that the record does not support the court's findings. In
> other words, the restriction is on the appellate court, not the trial judge.
> This is an extremely deferential standard of review.

{¶39} This paragraph further interpreting R.C. 2953.08 is just as baffling and

troubling as paragraph 20, if not more so. There is no "restriction" on appellate courts.

Saying that, however, does not mean that there is a "restriction" on the trial court. Of

course the "restriction" is not on the trial court — it is the standard of review for appellate

courts. "Restrictions" on trial courts are set forth in R.C. 2929.11, 2929.12,

2929.14(C)(4) and all of the other sentencing provisions. But the statute is not written in

the "negative" — and even if it is (simply because it contains the word "not"), it certainly

does not mean what *Venes* (and unfortunately, the many cases following *Venes* on this

point[2]) says it means. If an appellate court clearly and convincingly finds that the record

---

[2] *See State v. Thompson*, 9th Dist. Wayne No. 15AP0016, 2016-Ohio-4689, ¶ 45; *State v. Brandon*, 2d Dist. Clark Nos. 2014-CA-143, 2014-CA-144, and 2014-CA-145, 2016-Ohio-227, ¶ 12; *State v. Mason*, 12th Dist. Butler No. CA2014-10-217, 2015-Ohio-1931, ¶ 8; *State v. Bass*, 4th Dist.

does not support the trial court's findings, we may increase, reduce, modify, or otherwise reverse a sentence. That is the same as saying that the record must clearly and convincingly support the trial court's findings. But most importantly, this is *not* an "extremely deferential review."

{¶40} In *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, decided in March 2016, the Ohio Supreme Court, well aware of *Venes* and the many cases following *Venes* on this point, did not place these "restrictions" or limitations on appellate courts as *Venes* claims. Nor did the Supreme Court say anything about R.C. 2953.08 being "extremely deferential." *Marcum* explicitly construed R.C. 2953.08 without those limitations and, thus, it is my view that *Marcum* effectively overruled paragraphs 20 and 21 of *Venes*. In construing R.C. 2953.08, the Supreme Court stated in *Marcum*:

> In the final analysis, we hold that R.C. 2953.08(G)(2)(a) compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under "division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code." *See State v. Belew*, 140 Ohio St.3d 221, 2014-Ohio-2964, 17 N.E.3d 515, ¶ 12 (Lanzinger, J., dissenting from the decision to dismiss the appeal as having been improvidently accepted) ("R.C. 2953.08(G)(2) repudiates the abuse-of-discretion standard in favor of appellate review that upholds a sentence unless the court of appeals clearly and convincingly finds that the record does not support the trial court's findings").
>
> Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases,

---

Washington No. 16CA32, 2017-Ohio-7059, ¶ 6; and *State v. St. John*, 11th Dist. Lake No. 2015-L-133, ¶ 32.

and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Marcum* at ¶ 22-23.

**{¶41}** There is nothing in the Supreme Court's interpretation of R.C. 2953.08(G)(2) to indicate that this is "an extremely deferential review." Clear and convincing does not rise to the level of "beyond a reasonable doubt." Maybe if appellate courts had to find that the record does not support the trial court's findings "beyond a reasonable doubt," I could agree that we could call it "extremely deferential." But we do not. Under R.C. 2953.08, appellate courts may not modify or reverse a sentence at their whim or fancy. And there is no question that trial courts have wide discretion to fashion a sentence within the statutory framework. That does not mean, however, that appellate courts should not fulfill their duty to actively review a record to determine if it supports the trial court's sentence — to provide *meaningful* appellate review of a felony sentence.

**{¶42}** Painter concluded his article, *Appellate Review Under the New Felony Sentencing Guidelines*, by asking "what's next?" He stated:

With the recent amendment to the sentencing guidelines that an "appellate court's standard for review is not whether the sentencing court abused its discretion," the debate is over regarding whether abuse of discretion remains the standard of review. The legislature has clearly indicated that appeals courts must actively review sentences, not merely defer to the determinations of trial judges. Because a primary purpose of Senate Bill 2 is to eliminate disparate sentencing for similar offenses, it seems only logical that appellate courts must take a more active role in reviewing sentences than that allowed under the deferential abuse-of-discretion standard. A more active review process is the only effective way to ensure that trial judges are properly and consistently applying the guidelines. Otherwise, Senate Bill 2, which was intended to overhaul felony sentencing with appellate courts playing an active role in ensuring consistency, would be meaningless.

But the debate is not necessarily over. Although it is clear that abuse-of-discretion is no longer the standard of review, an issue still remains regarding how intense the standard of review should be — will it be on the deferential end of the continuum, or will it be on the other end, such as a de novo review?

*Id*. at 545-546.

{¶43} Since Painter wrote his article — nearly 20 years ago — the pendulum has swung considerably on the "deferential end of the continuum," so much so that it is effectively back to pre-S.B. 2 levels. As one court expressed in reversing a defendant's 20-year aggregate sentence because the record did not clearly and convincingly support the trial court's consecutive sentence findings and did not demonstrate that it was the minimum sanction to accomplish the purposes of sentencing without imposing an unnecessary burden on the state:

"Formalism" has been described as scrupulous or excessive adherence to outward form at the expense of inner reality or content. We are concerned that our sentencing jurisprudence has become a rubber stamp for rhetorical formalism. It appears that consecutive sentences will be upheld on appellate review as long as the aggregate sentence is within the arithmetic

long-addition established by the statutes and the trial judge and the entry state that this calculation is (1) necessary to protect the public from future crime or to punish the offender, (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one or more of the offenses was committed while awaiting trial or sentencing.

*State v. Adams*, 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160, ¶ 30.

{¶44} The "hallmark" of S.B. 2 was sentencing reform that involved a system of "legislative guidance coupled with *strong* appellate review" to "achieve consistency in sentencing, control costs, and incorporate new knowledge about human behavior and sentencing alternatives in a manner that is less political and more open to an objective balancing of societal needs." (Emphasis added.) Griffin and Katz, *Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan*, 53 Case W.Res.L.Rev. 1, 2 (2002) ("Ohio Plan"). Indeed, "[t]he capstone of the Ohio Plan [was] appellate review." *Id.* at 3.

{¶45} Again, when the General Assembly enacted H.B. 86, reviving R.C. 2929.14(C)(4) and 2953.08(G)(2), the purpose, in part, was "to reduce the state's prison population and to save the associated costs of incarceration by diverting certain offenders from prison and by shortening the terms of other offenders sentenced to prison." *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 20; *see also State v. Limoli*, 140 Ohio St.3d 188, 2014-Ohio-3072, 16 N.E.3d 641, ¶ 10; *State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, ¶ 17. This is because, as of February 22, 2011, Ohio prisons held 50,461 inmates — 31 percent over capacity or 12,500 more

inmates than our prisons were expected to hold. David J. Diroll, *Prison Crowding: The Long View, With Suggestions,* 4 (Mar. 2011).

**{¶46}** With this context in mind, R.C. 2929.11(A) now states:

> A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender *using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources*. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.

(Emphasis added.)

**{¶47}** In H.B. 86, the General Assembly added the language, "using the *minimum sanctions* that the court determines accomplish those purposes without imposing an *unnecessary burden* on state or local government resources" to the original language of R.C. 2929.11(A). (Emphasis added.) Regarding former R.C. 2929.11(A), Griffin and Katz had explained that it "operate[d] to impose real control over judicial decision-making." Ohio Plan at 6. Thus, R.C. 2929.11(A), as amended by H.B. 86, arguably imposes *even more* control over judicial decision-making than it did under S.B. 2.

**{¶48}** And under R.C. 2929.11(B), a felony sentence "shall be reasonably calculated to achieve the two overriding purposes of felony sentencing" and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes

committed by similar offenders."   With respect to this provision under S.B. 2, Griffin and Katz explained:

> The effect under the new law of establishing "public protection" and "punishment" as overriding purposes of sentencing but not limiting them to "considerations" is that every sentence must now be assessed by whether, as set forth in R.C. 2929.11(B), it is "reasonably calculated to achieve" those overriding purposes.   Failure of a sentence to do so causes it to be appealable on the ground that the sentence is "contrary to law."

Ohio Plan at 6.

{¶49} Under *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, appellate courts are "compelled" to "modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under" R.C. 2929.14(C)(4) (and other findings not relevant to this appeal) or are otherwise contrary to law.   *Id*. at ¶ 22; R.C. 2953.08(G)(2).   A sentence is contrary to law if the trial court fails to impose a sentence that is proportionate and fair and does not overburden state prisons or state and local budgets.   Thus, in reviewing a sentence, we must perform our duty to determine if the trial court has complied with the applicable statutes and imposed a sentence that is "reasonably calculated to achieve" the overriding purposes of felony sentencing" and is "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim."   R.C. 2929.11(B).   We must also ensure that the sentence is "consistent with sentences imposed for similar crimes committed by similar offenders."   *Id*.   And we must make certain that the trial court, in exercising its discretion, imposed a sentence that achieves the overriding purposes of felony sentencing — protecting the public and punishing the offender — "using the

minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A).

**B. Consecutive Sentences under R.C. 2929.14(C)(4)**

{¶50} The majority asserts that "[t]he purpose of R.C. 2929.14(C)(4) is to prevent this type of career criminal [discussing Roberts] from perpetuating a cycle of criminality upon the public." While I agree the majority's stated purpose for imposing consecutive sentences is at least one reason to do so, I disagree that is the purpose behind R.C. 2929.14(C)(4). If that were the case, there would not be a presumption for concurrent sentences in Ohio, nor would there be any reason to require the trial court to make findings before imposing consecutive sentences. We could simply go back to pre-S.B. 2 days — when trial courts were free to sentence an offender to consecutive sentences by simply stating so. A brief review of the history of consecutive sentences is instructive.

{¶51} The presumption under R.C. 2929.41(A) — that prison sentences for multiple offenses be served concurrently — was not always the case. Indeed, it was the exact opposite. *See State v. Lett*, 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281 (8th Dist.), quoting *King v. Maxwell*, 173 Ohio St. 536, 538, 184 N.E.2d 380 (1962) ("'Concurrent sentences, however, require a positive act by the trial court, and in the absence of a declaration thereof by the trial court, it is presumed such sentences will run consecutively.'"); *see also Stewart v. Maxwell*, 174 Ohio St. 180, 181, 187 N.E.2d 888

(1963) (characterizing the imposition of concurrent sentences as a "reward" because it meant that the offender had been relieved of "paying a part of the penalty for his crimes").

{¶52} As we explained in *Lett*, the General Assembly "ended the long-standing presumption that sentences for multiple convictions be served consecutively" in 1974 when it adopted the "approach taken by the American Law Institute's Model Penal Code" in enacting former R.C. 2929.41(A), which was in effect until S.B. 2.[3]   This provision stated then, as it does now, that aside from an exception set forth in the subsection (B), "a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment."   *Lett* at ¶ 35, citing former R.C. 2929.41(A).   We referred to this "change in presumption from consecutive sentences to concurrent sentences" as a "sea change in the law."   *Id*. at ¶ 39.   Despite this "sea change in the law," however, R.C. 2929.41(A) only required that a trial court state that it was imposing consecutive sentences to make it so.

{¶53} In *Lett*, we surmised that the change in presumption in 1974 occurred for several reasons: "a backlash against prosecutorial overindictment, disparity in the manner in which consecutive sentences were imposed, frustration with the virtually unreviewable

---

[3]Former R.C. 2929.41 stated:

(A) Except as provided in division (B) of this section, a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment.   In any case, a sentence of imprisonment for misdemeanor shall be served concurrently with a sentence of imprisonment for felony served in a state penal or reformatory institution.
(B) A sentence of imprisonment shall be served consecutively to any other sentence of imprisonment, in the following cases:
(1) When the trial court specifies that it is to be served consecutively.

nature of consecutive sentencing, and economic considerations relating to the long-term housing of prisoners." *Id.* Unfortunately, these reasons sound all too familiar. Because despite the changes made in 1974, as well as S.B. 2 over 20 years later and most recently H.B. 86, we, as a state, still grapple with these same issues today. Part of the reason that we still do is because trial courts continue to impose harsh sentences far too often for nonviolent crimes, and appellate courts continue to refuse to perform their duty to provide meaningful appellate review.

{¶54} After review of the sentence imposed in this case, I agree with Roberts that consecutive sentences are disproportionate to the *seriousness* of his conduct and the danger he poses to the public. This is especially so in light of the principles and purposes of felony sentencing set forth in R.C. 2929.11, which states that a sentencing court "shall be guided by the overriding purposes of felony sentencing" — to protect the public and punish the offender — using "the *minimum sanctions* that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). Additionally, a sentence must be "reasonably calculated to achieve the two overriding purposes of felony sentencing" and be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim[.]" R.C. 2929.11(B). I agree with Roberts that the sentence imposed by the trial court does not meet any of these requirements.

{¶55} The trial court sentenced Roberts to nearly 19 years in prison — for stealing a bottle of Pepsi and pushing a store security guard, stealing $250 of fishing equipment

from someone's garage, failing to report for supervision, and breaking and entering (or attempting to enter) the homes of three victims and stealing less than $2,000 worth of property. These were not violent crimes. No one was hurt. Yet, Roberts received 18 years and 11 months in prison. Without minimizing the emotional distress the burglary offenses undoubtedly caused the victims, Roberts's offenses do not reflect such seriousness and danger to the public that almost 19 years in prison is necessary to protect the public from him.

{¶56} Indeed, such a lengthy sentence may demean the seriousness of other crimes and the harm to other victims. For example, an offender who murders someone could get out of prison in less time; the sentence for murder is 15 years to life. R.C. 2929.02(B)(1). Rape has a maximum sentence of 11 years in prison. R.C. 2907.02(B). Offenders who repeatedly beat their significant others or spouses do not get that much time — even when the offender has multiple domestic violence convictions. *See State v. Russell*, 12th Dist. Butler No. CA2012-03-066, 2013-Ohio-1381 (defendant who was convicted of abduction and domestic violence for beating his girlfriend was sentenced to 36 months in prison; it was his third domestic violence conviction). Those are serious crimes of violence.

{¶57} At the time of these offenses here, Roberts was approximately 50 years old. According to his presentence investigation report, he was found to be barely functioning within a borderline intellectual level. He was also addicted to heroin and a lesser form of heroin. Consecutive sentences are reserved for the worst offenses and offenders.

*State v. Ladson*, 8th Dist. Cuyahoga No. 83209, 2004-Ohio-2973, ¶ 23, citing *State v. Boland*, 147 Ohio App.3d 151, 162, 2002-Ohio-1163, 768 N.E.2d 1250 (7th Dist.). There is simply nothing in the record before us to indicate that Roberts's crimes were so great or unusual that no single prison term would adequately reflect the seriousness of his conduct.

{¶58} The majority compares the facts of this case to the facts in *State v. Aniton*, 8th Dist. Cuyahoga No. 102440, 2015-Ohio-4080, where this court upheld a 21-year sentence for multiple crimes. But in *Aniton*, one of the defendant's convictions was unlawful sexual conduct with a minor, and in another, he committed some of the burglary offenses with a firearm. Plus, unlike Roberts, the defendant's prior criminal history in *Aniton* included an offense of violence.

{¶59} In summary, although the court made the findings necessary to order Roberts to serve his sentences consecutively, I would clearly and convincingly find that the record does not support the trial court's finding that consecutive sentences — totaling nearly 19 years in prison — are necessary to protect the public or punish Roberts and are not disproportionate to the seriousness of Roberts's conduct and to the danger he poses to the public. While I certainly understand the trial court's frustration with Roberts, the record does not demonstrate that an 18-year and 11-month prison sentence was "reasonably calculated to achieve" the purposes of felony sentencing using the minimum sanctions without imposing an unnecessary burden on the state.

## C. Sentence Modification

{¶60} In this case, the trial court sentenced Roberts to six months for escape in Cuyahoga C.P. No. CR-14-584010-A. The court sentenced Roberts to seven years on each of the two burglary counts in Cuyahoga C.P. No. CR-14-586073-A, to be served concurrent to each other. And in Cuyahoga C.P. No. CR-14-584791-A, the court sentenced Roberts to seven years for burglary. With the exception of the six-month sentence for escape and the concurrent terms on the two burglary charges in Cuyahoga C.P. No. CR-14-586073-A, the trial court ordered that all the other prison terms, including the sentences in Cuyahoga C.P. Nos. CR-12-561797-A and CR-13-578409-A, be served consecutively, which amounted to a total sentence of 18 years and 11 months in prison. I would sustain Roberts's first assignment of error, vacate the consecutive portion of his sentence, and modify the sentence to concurrent terms, for an aggregate sentence of seven years in prison.